**Bernardo EURESTE, Appellant,**

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 14–01–00311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 18, 2002.

Tina K. Salem-Boyd, Walter Andrew Boyd, Houston, for appellants.

Jerald Grimes Molleston, Houston, Linda Acevedo, Austin, Kent Rutter, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION

GUZMAN, Justice.

Bernardo Eureste appeals the trial court's judgment suspending him from the practice of law for three years—two years active suspension and one year probated suspension. In five issues, Eureste contends: (1) the judgment is void because the trial judge failed to take the appropriate oath; (2) the evidence was legally and factually insufficient to support the judgment; and (3) the trial court abused its discretion in imposing punishment. We affirm.

## I. BACKGROUND

Eureste is an attorney licensed to practice law in Texas since 1990. During the relevant time period, his practice consisted almost entirely of representing claimants in workers' compensation matters. At the peak of his practice in 1996 and 1997, he had offices in thirteen cities across Texas, over 60 employees, and approximately 1200 clients. The Texas Workers' Compensation Fund ("the Fund")[1] and Juan Granado, a former client, filed complaints against Eureste with the State Bar of Texas ("State Bar"). The basis of the Fund's complaint was Eureste's billing practices and resulting attorney's fees in workers' compensation cases. Granado's complaint arose from Eureste's allegedly deficient representation in a workers' compensation case. A brief overview of workers' compensation laws regarding attorney's fees is in order.

### A. Texas Workers' Compensation Attorney's Fees

Section 408.221 of the Texas Labor Code governs the award of attorney's fees to the workers' compensation claimant's attorney. *See* TEX. LAB.CODE ANN. § 408.221 (Vernon Supp.2002). Section 408.221 provides that the attorney's fees must be approved by the Texas Workers' Compensation Commission ("TWCC") or the court. *Id.* § 408.221(a). The fees are "based on the attorney's time and expenses according to written evidence presented to the commission or court." *Id.* § 408.221(b). The fees are paid from the claimant's recovery and may not exceed 25% of that recovery. *Id.* § 408.221(b), (i). The TWCC or the court shall consider the following factors in approving attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the fee customarily charged

---

1. The Fund is a state created entity that provides workers' compensation insurance and investigates cases of workers' compensation fraud in conjunction with the Texas Workers' Compensation Commission.

in the locality for similar legal services; (5) the amount involved in the controversy; (6) the benefits to the claimant that the attorney is responsible for securing; and (7) the experience and ability of the attorney performing the services. *Id.* § 408.221(d). Section 408.221 requires that the TWCC provide guidelines for maximum attorney's fees for specific services in accordance with these provisions. *See id.* § 408.221(f).

The TWCC rules set forth additional requirements for the submission and approval of attorney's fees. The TWCC rules reiterate that any fee approved by the commission "shall be limited to 25% of each weekly income benefit payment to the employee, up to 25% of the total income benefits allowed and shall also be based on the attorney's time and expenses." 28 TEX. ADMIN. CODE § 152.1(c) (2001). To claim a fee, an attorney must submit Form TWCC 152 entitled "Application and Order for Attorney's Fees," with "time, hourly rate, and expenses itemized separately for the attorney and for any legal assistant." *Id.* § 152.3(a). On Form TWCC–152, the attorney must list the category of service rendered, the date of the service, the person who provided the service, the actions performed, the recipient of the action, and the hours requested. The TWCC has also established guidelines for the approval of attorney's fees that include a list of a maximum number of hours allowed per month for various legal services. *See id.* § 152.4(c). The TWCC automatically approves a fee for legal services without justification from the attorney if the number of hours for the services are within the guidelines. *See id.* § 152.3(b); Form TWCC–152. The guidelines also set the maximum hourly rate for an attorney at $150.00, and the maximum hourly rate for a legal assistant at $50.00. *See* 28 TEX. ADMIN. CODE § 152.4(d). Once the fees are approved, the TWCC issues an order for

payment. *Id.* § 152.3(b). The fees, up to the cap of 25%, are then deducted from the client's monthly income benefit checks and paid directly to the attorney. *Id.* § 152.1(c).

## B. Eureste's Billing Practices

There was no dispute at trial regarding the method used by Eureste to submit attorney's fees to the TWCC. His office submitted a Form TWCC–152 for each client on a monthly basis. At the time of trial, Eureste had submitted approximately 200,000 TWCC–152 forms. Eureste did not account for actual time spent by him or his employees on the forms. Rather, he always reported he had personally worked a number of hours that, when multiplied by the statutory attorney rate of $150.00, resulted in a fee that was at least 25% of his clients' monthly income benefit. Eureste acknowledged that during the year and a half before August 1997, when the State Bar complaint arose, his policy was to bill the maximum allowed by the guidelines on every file. Some of the activities he billed for included opening the client's file and preparation and attendance at hearings. On most files, even though actual activities performed and time spent varied from client to client, he billed each client 2.5 hours per month (resulting in a fee of $375.00) for "file review" under the "Communications" category. This is the maximum time allowed for "Communications" under the TWCC guidelines. *See* 28 TEX. ADMIN. CODE § 152.4(c). His Form TWCC–152 submissions did not arouse any suspicion and were always automatically approved because they were always within the guidelines. At trial, Elliott Flood, an attorney and vice-president of special investigations for the Fund, referred to this practice as billing "beneath the radar."

Eureste testified that on many of the cases, he was not spending the number of hours he billed every month. During the peak of his practice, he spent 80% of his time on administrative matters and 20% of his time on individual client's cases. Yet, he billed all time on the client's file under his name and at the attorney rate. He admitted that most of the attorney time he billed during the period before August 1997 was performed by non-attorneys or attorneys other than himself. Eureste estimated that only 25% of the work billed was performed by attorneys, while 75% of the work billed was performed by non-attorneys.[2] The non-attorney time was billed by Eureste at the higher attorney rate of $150.00. Eureste never billed legal assistant time at the legal assistant rate.

At trial, Flood testified Eureste's case was unique because no other situation approached the number of hours that Eureste billed for each day on his Form TWCC–152s. Eureste's fees approved by the TWCC from June 1, 1995, to May 31, 1996, totaled $2,330,376.32, while the next highest attorney's approved fees totaled $935,582.50. Flood testified Eureste billed an average of 80 to 90 hours per day. A summary of Eureste's TWCC attorney's fees orders from December 1, 1995, to November 30, 1996, reveals he billed as his own time more than twenty-four hours almost daily and on many days, Eureste billed more than 100 hours. Eureste did not dispute that he billed in excess of twenty-four hours per day of his own time. Rather, he testified it would have been too burdensome to base his billings on actual time. In support of that claim, he referred to a one-day test accounting in which he

instructed his employees to account for every activity they performed during that one day and the time spent on the activity.[3] Ordinarily, Eureste's employees input a description of the activities they performed on a case into the computer file for that case, but did not detail the time required to perform those activities. Based on the results of his one-day test, Eureste concluded it would be too onerous for him to submit bills based on actual time expended because that would require a larger number of entries per month.

### C. Granado Complaint

On November 15, 1995, Granado fell from a tractor while on the job and injured both shoulders. On May 9, 1996, he retained Eureste's Amarillo office because he was experiencing difficulties advancing his workers' compensation claim. Granado signed a contract, which provided that Eureste would represent him in connection with his claim for workers' compensation benefits and that attorney's fees would be in an amount governed by the workers' compensation laws of Texas.

Before Granado retained Eureste, he had been classified as having a 10% Maximum Medical Improvement. Eureste's office successfully negotiated with the carrier and obtained a 20% Maximum Medical Improvement. This increase made Granado eligible for additional benefits. Furthermore, when Granado retained Eureste, the workers' compensation carrier had accepted his left shoulder injury as a compensable injury, but had refused to accept the right shoulder injury. An attorney from Eureste's office attended two Benefit

---

**2.** Eureste's offices were staffed primarily by non-attorney caseworkers who conducted the "intake" of new clients, explained the workers' compensation system and attorney's fees procedures to clients, and "worked up" the clients' files.

**3.** Eureste also performed another one-day test accounting, but the results were not entered into evidence.

Review Conferences on Granado's behalf and secured an agreement establishing Granado's right shoulder injury as a compensable injury. Notwithstanding that agreement, the carrier denied payment for surgery to the right shoulder maintaining the surgery was not "reasonable and necessary." Granado testified that his physician, Dr. Brooker, repeatedly told him he could not treat his right shoulder because of the carrier's denials and that his lawyer would have to assist him further.

Eureste did not submit any letters or forms to obtain Medical Review for Granado regarding the denials of payment. *See* Tex. Lab.Code Ann. § 413.031 (Vernon Supp.2002). He testified that he does not represent claimants during the Medical Review process because he cannot bill for that representation. Eureste maintained it is a doctor's responsibility to pursue Medical Review to obtain authorization for a particular treatment.

On April 8, 1997, Granado wrote a letter to Eureste expressing dissatisfaction with the handling of his case. Granado relayed his inability to work and the "agonizing pain" he experienced due to numerous delays and denials of benefits. He complained he had only met with a lawyer twice and that, despite numerous calls to Eureste's office, he still had received no treatment for his right shoulder. He implored Eureste to take immediate action on his case. Four months later, on August 29, 1997, Granado wrote another letter to Eureste complaining that his right shoulder still had not been treated, despite having had Eureste as his attorney for over a year. Granado stated he "called time after time and right now I've exhausted my income and my cabinets are bare."

Granado further testified that all he had received from Eureste during the time he needed surgery were charges for reviewing his file. Eureste billed at his hourly rate and under his name for the intake of Granado's file, although the intake was performed by non-attorney employees in the Amarillo office. He also billed at his rate and in his name for attending Granado's Benefit Review Conferences, although another attorney actually attended the conferences. As with his other clients, Eureste billed Granado's file two and a half hours for "file review" with a resulting fee of $375.00 per month from May of 1996 until November of 1997. Granado testified that although he rarely spoke with Eureste, he did speak to the ladies in his office for fifteen to twenty minutes per month. Eureste admitted that neither he nor his staff had reviewed Granado's file for two and one-half hours every month. Eureste billed a total of $7,875.00 on Granado's file of which he collected $5,753.38.

Shortly before Granado's benefits ran out in November 1997, he discovered that Eureste's Amarillo office was being closed. At that time, a staff person informed Granado that Eureste planned to withdraw as his attorney. On January 13, 1998, Eureste sent a letter to Granado withdrawing as his attorney. Eureste testified he withdrew because he was closing his Amarillo and Lubbock offices due to State Bar complaints. After Eureste withdrew, Granado continued on his own to pursue the treatment he needed. He requested a Medical Review hearing in Austin, drove from his home near Amarillo to the hearing, and appeared at the hearing opposite an attorney representing the insurance carrier. He was eventually successful in the Medical Review process and obtained approval for the surgery. He had the surgery in October of 1999, more than three years after he retained Eureste.

### D. Trial Court Proceedings

After State Bar grievance panels conducted hearings and recommended disci-

pline, Eureste exercised his right to trial de novo in district court. *See* TEX.R. DISCIPLINARY P. 2.14, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A 1 (Vernon 1998). The Commission for Lawyer Discipline ("CFLD") brought this attorney disciplinary action alleging violations of multiple provisions of the Texas Disciplinary Rules of Professional Conduct. The Supreme Court of Texas appointed Judge David Brabham of the 188th District Court of Gregg County to preside over Eureste's disciplinary action in the 152nd District Court of Harris County. *See* TEX.R. DISCIPLINARY P. 3.02, 3.03; TEX. GOV'T CODE ANN. § 74.057 (Vernon 1998). After a bench trial, the trial court found Eureste had violated Texas Disciplinary Rules of Professional Conduct 1.01(b), 1.03(a), 1.03(b), 1.04(a), 1.15(d), 8.04(a)(1) and 8.04(a)(3). *See* TEX.R. DISCIPLINARY PROF'L CONDUCT, *reprinted* in TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 1998). The trial court then imposed sanctions that included a two year active suspension and a one year probated suspension. The court also ordered Eureste to pay restitution in the amount of $3,000.00 to Granado, and to reimburse the CFLD's attorney's fees in the amount of $18,310.00.

## II. DISCUSSION

### A. Judge's Oath

In his first issue, Eureste contends Judge Brabham was an "appointed officer" when he presided over this disciplinary action, and thus, was required to take the oaths required of appointed officers before presiding over the matter. Eureste further contends that, because Judge Brabham did not take the required oaths, he was without authority to conduct trial or enter judgment in this case, and that his judicial actions are a nullity. We disagree.

The Texas Constitution requires elected and appointed officials to take two oaths before assuming office: the oath of office and the anti-bribery oath. *See* TEX. CONST. art. XVI, § 1 (amended Nov. 6, 2001). The oath of office is the same for elected and appointed officials. *See id.* art. XVI, § 1(a), (c) (amended Nov. 6, 2001). At the time of the proceedings below, the anti-bribery oath for elected officials differed from the anti-bribery oath for appointed officials. *See id.* art. XVI, § 1(b), (d) (amended Nov. 6, 2001).[4] Both elected and appointed officials must file the anti-bribery oath with the Secretary of State before taking the oath of office. *See id.* art. XVI, § 1(e), (f).

The record shows that Judge Brabham took and filed with the Secretary of State both of the oaths required of elected officials before taking office as the elected district judge of the 188th District Court. Judge Brabham presided over this disciplinary action in Harris County by Order of the Texas Supreme Court pursuant to Texas Rules of Disciplinary Procedure 3.02 and 3.03.[5] We have found no authority

---

4. Elected officials must swear or affirm that "I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected ..." TEX. CONST. art. XVI, § 1(b) (amended Nov. 6, 2001). Appointed officials must swear or affirm that "I have not directly or indirectly paid, offered, or promised to pay, contributed, or promised to contribute any

money, or valuable thing, or promised any public office or employment, as a reward to secure my appointment or confirmation thereof...." *Id.* art. XVI, § 1(d).

5. Rule 3.02 provides that when a respondent in an attorney disciplinary proceeding elects trial de novo, the supreme court must appoint an active district judge to preside over the proceeding. *See* TEX.R. DISCIPLINARY P. 3.02. The rule further requires that the appointed judge must not be a resident of the Adminis-

expressly stating that an active district judge, who presides over a disciplinary action in a different district pursuant to Rules 3.02 and 3.03, must take the anti-bribery oath required of appointed judges before presiding. We recognize that Rule 3.02 and the Order of the Supreme Court use the term "appoint" in describing Judge Brabham's assignment. However, we do not agree that Judge Brabham was an "appointed official" as contemplated by the provision of the Texas Constitution requiring appointed officials to take specific oaths. The Texas Constitution requires elected and appointed state officials to take their respective oaths "before they enter upon the duties of their offices." TEX. CONST. art. XVI, § 1(a), (c). Judge Brabham did not assume a new constitutional office requiring a new oath when he presided over Eureste's disciplinary proceeding. The Texas Constitution creates a single office of district judge, not a separate and distinct office for each judicial district in the state. *See id.* art. V, § 7. Furthermore, the language of Rule 3.02, providing for the appointment of an "active district judge" to preside over disciplinary actions, negates the idea that Judge Brabham somehow assumed a new office requiring a new oath when he presided over this disciplinary action. *See* TEX.R. DISCIPLINARY P. 3.02. Judge Brabham remained in his existing office, albeit in a different county, when he heard this matter.

■■■ Eureste's argument that Judge Brabham was acting as a "special judge" presiding over a "special proceeding" is also without merit. A special judge is a person who serves as a judge in a particular case, but who is otherwise not a judge. *Miller v. State*, 866 S.W.2d 243, 246 (Tex. Crim.App.1993);[6] *see also* TEX. GOV'T CODE ANN. § 24.004 (Vernon 1988) (allowing special judges to preside over cases in certain instances). Rule 3.02 does not designate the presiding judge in a disciplinary action as a "special judge." Likewise, the Supreme Court Order did not designate Judge Brabham as a "special judge." When a district judge exchanges benches with or holds court for another district judge, he does so not as a special judge but as a district judge. *Baker v. State*, 159 Tex.Crim. 130, 131–32, 261 S.W.2d 593, 594 (1953). We find, Judge Brabham presided over this proceeding in his existing capacity as a district judge.

As Eureste notes, the Supreme Court Order also made Judge Brabham's assignment pursuant to Section 74.057 of the Texas Government Code, which provides that the "chief justice may assign judges of one or more administrative regions for service in other administrative regions when he considers the assignment necessary to the prompt and efficient administration of justice." Eureste cites *Prieto Bail Bonds v. State*, 994 S.W.2d 316 (Tex.App.-El Paso 1999, pet. ref'd), for the proposition that the constitution requires a visiting judge to take the required oaths for each assignment. We disagree with Eureste's interpretation of *Prieto*.

trative Judicial Region in which the respondent resides. *Id.* Rule 3.03 requires that the proceeding occur in the county of the respondent's principal place of practice. *See* TEX.R. DISCIPLINARY P. 3.03.

6. *Miller* dealt with a special judge appointed to sit for a county judge pursuant to a now superceded version of Section 26.022 of the Texas Government Code. The current version of the statute no longer allows appointment of a special judge to sit for the county judge, but instead allows only a "visiting judge" to be appointed for that purpose. *See* TEX. GOV'T CODE ANN. § 26.022 (Vernon Supp.2002); *See also Etchison v. State*, 51 S.W.3d 844, 846 (Tex.App.-Waco 2001, no pet.) (discussing changes in Section 26.022).

In *Prieto*, the court ruled that a *senior judge* was an appointed officer who was required to take the oaths for appointed officials when he accepted his assignment as a visiting senior judge. *Id.* at 320. "Senior judge" is a specific term used for retired judges who satisfy certain requirements and are eligible to receive assignments as a judge. *See* TEX. GOV'T CODE ANN. §§ 74.054, 74.055, 75.001, 75.002 (Vernon 1998). Contrary to Eureste's contention, the court did not make its holding applicable to all visiting judges sitting by assignment. The court reasoned that when a presiding judge determines that a *retired judge* meets the statutory requirements to be placed on a list of retired judges eligible for assignment, that placement is akin to an appointment of that *retired judge* to a position of availability for assignments. *Prieto*, 994 S.W.2d at 319–20. Moreover, when the retired judge's term of office expired, his oaths of office expired as well. *Id.* at 320. The court stated "[e]lected judges must take a new oath with each new term: we can see no logic whereby a senior judge's oath would survive an expired term of office, while that taken by a judge successfully seeking re-election would not." *Id.* at 320. Further compounding the problem was the fact that the judge had never taken the anti-bribery oath because that oath had not yet been added to the Texas Constitution when he retired from active service. *Id.* at 320–21; *see also In re Gen. Elec. Capital Corp.*, 63 S.W.3d 568, 570 (Tex. App.-El Paso 2001, no pet. h.) (court interpreted its own decision in *Prieto* as applying to senior judge).

We find *Prieto* is not applicable to this proceeding. Unlike the judge in *Prieto*, Judge Brabham was not a retired judge accepting assignment as a senior judge. He was an active district judge with uninterrupted service and, therefore, still subject to the required oaths. Eureste has cited no authority supporting his contention that an active district judge must retake the judge's oaths before sitting as a judge in another district. As the *Prieto* court recognized, no statute explicitly requires that a judge appointed under Section 74 take an oath of office before being assigned to cases as a visiting judge.[7] *Prieto*, 994 S.W.2d at 318.

We hold Judge Brabham was not required to take any additional oaths when he presided over this disciplinary action. Therefore, Eureste's first issue is overruled.

**B. Sufficiency of the Evidence Issues**

Eureste challenges the legal and factual sufficiency of the evidence to support the trial court's conclusions regarding his violations of the Texas Disciplinary Rules of Professional Conduct.

**1. Standard of Review**

 In reviewing a challenge to the legal sufficiency of the evidence, a reviewing court must consider only the evidence and reasonable inferences therefrom, which, when viewed in the most favorable light, support the findings of the fact finder. *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998); *Foye v. Montes*, 9 S.W.3d 436, 438 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). We must disregard all evidence and inferences which are contrary to the findings. *Franco*, 971 S.W.2d at 54; *Foye*, 9 S.W.3d at 438. If the evidence is legally

---

7. By comparison, the statute allowing a visiting judge to preside in constitutional county courts specifically requires that the appointed visiting judge, whether a retired, former, or active judge, take the oath of office required by the constitution in addition to any oath previously taken. TEX. GOV'T CODE ANN. § 26.015 (Vernon Supp.2002).

sufficient when viewed in this light, then we may not reverse the trial court's judgment. *Franco,* 971 S.W.2d 52, 54; *Harris County Dist. Attorney's Office v. M.G.G.,* 866 S.W.2d 796, 797–98 (Tex.App.-Houston [14th Dist.] 1993, no writ).

 When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Mayes v. Stewart,* 11 S.W.3d 440, 450 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). We shall set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Mayes,* 11 S.W.3d at 450–51. The trier of fact is the sole judge of the weight and credibility of the witnesses' testimony. *Mayes,* 11 S.W.3d at 450–51; *Knox v. Taylor,* 992 S.W.2d 40, 50 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The appellate court may not substitute its own judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *Knox,* 992 S.W.2d at 50; *Mayes,* 11 S.W.3d at 450. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Mayes,* 11 S.W.3d at 450–51; *Knox,* 992 S.W.2d at 50.

### 2. Eureste's Fees

In his second issue, Eureste challenges the trial court's conclusions regarding his billing practices and resulting fees. Specifically, the trial court found Eureste violated Texas Disciplinary Rules of Professional Conduct 1.04(a) and 8.04(3).

### a. Rule 1.04(a)—Illegal or Unconscionable Fees

Texas Disciplinary Rule of Professional Conduct 1.04(a) provides that a lawyer shall not enter into an arrangement for, charge, or collect an illegal or unconscionable fee. Tex.R. Disciplinary P. 1.04(a). Eureste contends there was no evidence at trial that his fees were illegal because they were not prohibited by statute. In support, he argues that "time and labor required" is only one of several factors enumerated by the Labor Code that the TWCC must consider in approving attorney's fees. He further argues the Labor Code does not specify that fees must be billed in a certain manner. We disagree.

 Although Section 408.221 of the Labor Code does list certain factors to be considered in approving a fee, only one of which is the time and labor required, Section 408.221 clearly requires that the fees be based on the attorney's actual time. *See* Tex. Lab.Code Ann. § 408.221(b). The TWCC rules also require that fees be based on actual time. 28 Tex. Admin. Code § 152.1(c).

 Eureste further contends his fees were not illegal because only the TWCC rules require that time be itemized separately for attorneys and legal assistants, and this requirement is not included in the more general provisions of the Labor Code. This contention is without merit. Eureste apparently maintains that because the Labor Code mentions only attorneys, and not legal assistants, it does not prohibit him from billing legal assistant's time at the attorney's rate. Although legal assistants are not specifically mentioned by Section 408.221 of the Labor Code, nothing in Section 408.221 of the Labor Code authorizes Eureste to submit legal assistant time as attorney time. *See* Tex. Lab.Code Ann. 408.221. Furthermore, the Labor Code should be read together with the TWCC rules. *See* 28 Tex. Admin. Code 152.4(a) (providing that guidelines outlined in Rule 152.4 shall be considered by TWCC along with factors and maximum

fee limitations set forth in Section 408.221 of Labor Code). The Labor Code provides that fees must be approved by the TWCC, and allows the TWCC to promulgate guidelines for maximum attorney's fees for specific services. *See* TEX. LAB.CODE ANN. 408.221(a), (f). The TWCC rules are more specific than, but do not conflict with Section 408.211 of the Labor Code. The TWCC rules address legal assistants, and allow their time to be billed, but separately and at a different rate than attorney time. *See* 28 TEX. ADMIN. CODE § 152.3(a). Additionally, the instructions accompanying Form TWCC–152 could not be more direct in requiring itemization of each individual's actual time. *See* Form TWCC–152.

■■■ Eureste acknowledged he submitted fees that were not based on actual time expended in many cases. He also testified he charged legal assistant time at the higher attorney rate and billed other attorneys' time as his own. Although Eureste urges on appeal that his fees were not prohibited by law, he, in effect, has admitted to submitting fees prohibited by law. The practical effect of his billing method was that his fees would equal 25% of the client's recovery irrespective of actual time spent on the case. Twenty five percent is the maximum an attorney may bill, not an amount that should be billed regardless of actual time expended. Eureste's billing practices clearly controverted the mandated time based billing system. *See* TEX. LAB.CODE ANN. § 408.221; 28 TEX. ADMIN. CODE § 152.1.

■■■ Eureste also challenges the court's finding that his fees were unconscionable. Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct provides that a fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a). Rule 1.04(b) lists certain factors that *may* be considered in determining the reasonableness of a fee, *but not to the exclusion of other relevant factors. Id.* Eureste complains the trial court focused almost exclusively on his billing practices, which are not an enumerated factor for determining reasonableness under Rule 1.04, when it should have focused on the fees themselves. The gist of Eureste's argument is that if the trial court had focused on the actual fees instead of his billing practices, the court would have concluded his fees were reasonable. This argument is based on Eureste's contention that the amounts he billed were less than he would have billed had he completed the Form TWCC 152s differently and submitted all billable hours by person and by rate.

The evidence does not support Eureste's contention that his fees were reasonable because he would have billed more had he billed actual activities performed. The only evidence offered by Eureste in support of this contention was Eureste's very general testimony. Although some of Eureste's TWCC fee orders were entered into evidence, there were no corresponding client files in the record showing the work justified the fee award in every case.[8] Eureste's logic results in grossly disproportionate billing for those clients who had very little work done on their files. Because the factors enumerated in Rule 1.04(a) are not exclusive, the trial court could consider all relevant evidence, including evidence regarding Eureste's bill-

---

**8.** The record contains an exhibit prepared by Eureste showing that the total amount of his actual fees billed in July of 1997 was less than the fees would have been if all employees had billed 40 hours per week at the rates set forth in the TWCC rules. However, this report relates to his total billings and not his billings for each client. Moreover, the report only covered one month.

ing practices, to determine whether the resulting fees were reasonable. One of the enumerated factors in determining reasonableness under Rule 1.04 is the amount involved and the results obtained. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b)(4). If a client who had very little work performed on her file is billed the same as every other client, the amount of that fee cannot be considered reasonable in relation to the work performed.

On the other hand, there was evidence that Eureste billed more than he would have billed by using the prescribed method. In fact, the computer file for one particular client reflects that Eureste continued to bill 2.5 hours for file review every month for almost a year after the client's death although the only activity during that entire period consisted of three telephone calls to the decedent's mother. Additionally, Flood calculated that Eureste would have billed approximately $900,000 instead of approximately $2,300,000 during the period from June 1, 1995, to May 31, 1996, had he billed actual time for each file. Assuming that 50% of the billings were collected, which is the usual percentage based on Flood's experience, Eureste earned approximately $700,000 above and beyond a reasonable fee.

Moreover, Eureste's argument that his fees were reasonable because they conformed with the TWCC fee guidelines is without merit. Flood testified that the presumption that a fee is reasonable if it does not exceed the guidelines is a rebuttable presumption based on actual time spent by the attorney. Clearly, the guidelines are just that: guidelines. They are the maximum amount that the TWCC will automatically approve for various activities, not the maximum amount an attorney may bill regardless of actual time expended. *See* 28 TEX. ADMIN. CODE § 152.3(b), 152.4(b).

The record reflects it was possible for Eureste to accurately account for his and his employees' time, but it would have cut into his profits to do so because of the size of his practice. He candidly admitted he could not ask an employee to whom he paid $7.00–$8.00 per hour to keep track of time in the manner prescribed by the TWCC rules. However, Flood testified all other law firms keep track of actual time and that he also kept track of actual time when he represented workers' compensation claimants. Eureste was aware that numerous law firms, including large law firms, bill attorney time at $150.00 per hour and use elaborate computer accounting programs to keep track of time. Nevertheless, he chose to employ a system whereby he billed every one of his clients (including Granado) $375.00 per month regardless of the amount of work actually performed. The result was that he billed and collected payment for legal services that were not rendered. That his excessive fees came directly out of his clients' benefit checks is particularly disturbing. Comment 8 to Rule 1.04 states that overreaching by a lawyer, particularly of a client who is unusually susceptible to overreaching, may indicate that a fee is unconscionable. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04 cmt. 8. Comment 8 further explains that a fee arrangement with an uneducated or unsophisticated individual having no prior experience in such matters should be more carefully scrutinized for overreaching. *Id.* According to Flood, many of Eureste's clients did not speak English, were not educated, could not read or write, and were not sophisticated. Yet, many of them were penalized as a result of Eureste's billing practices.

Accordingly, we hold the evidence is legally and factually sufficient to support the finding that Eureste charged illegal and unconscionable fees. The trial court did

not err in concluding that Eureste violated Rule 1.04(a).

### b. Rule 8.04(a)(3)—Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation

■■■ Rule 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3). Fraud is defined under the rules as conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information. TEX. DISCIPLINARY R. PROF'L CONDUCT terminology. Eureste contends he did not commit fraud because there is no evidence he intended to deceive the TWCC, the Fund, or his clients as to the legal representation provided. However, he ignores the fact that fraud is not the only conduct prohibited by Rule 8.04(a)(3). Any conduct involving dishonesty, deceit, or misrepresentation is also prohibited by Rule 8.04(a)(3). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3).

Eureste testified he approved the placement of his facsimile signature on each Form TWCC–152 generated by his office. He understood that by approving the placement of his signature on the forms, he was certifying that "every statement, numerical figure and calculation contained herein is within my personal knowledge and is true and correct, that it represents services, charges and expenses provided by me or my legal assistant under my supervision." The record, however, demonstrates that in many instances, Eureste's forms contained false information. Eureste's testimony reflects that he was aware of the requirement that the fees be itemized for attorneys and legal assistants and that they be based on actual time. Notwithstanding his knowledge of those requirements, he made a conscious decision to submit false information and disregard the requirement. Most significantly, he submitted the bills in such a manner that the inaccuracies would not be detected. The trial court could infer an intent to deceive from Eureste consistently billing "beneath the radar." Thus, the record supports the conclusion that his conduct constituted fraud, in addition to dishonesty, deceit, and misrepresentation.

Eureste next contends his representations, even if false, were immaterial because no one was misled since he did not submit fees that were greater than they would have been had he properly completed the forms. However, Rule 8.04(a)(3) does not contain a requirement that the representations be material to constitute a violation. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3). Eureste cites *Curtis v. Commission for Lawyer Discipline*, 20 S.W.3d 227, 234 (Tex.App.-Houston [14th Dist.] 2000, no pet.) as holding that a misrepresentation under Rule 8.04(a)(3) must be material and have been knowingly made by the attorney with the goal of misleading the party to whom the representation was made. In *Curtis*, the court found that a lawyer had violated Rule 7.02(a)(1), which prohibits a lawyer from making a material representation about his qualifications or services. *Id.* Although the *Curtis* court also considered a separate Rule 8.04(a)(3) violation, it did not establish a requirement of materiality for a Rule 8.04(a)(3) violation. *See id.* Nevertheless, the record reveals that Eureste's fraud was material because as previously discussed, it resulted in some clients being billed for work that was not performed. Some clients were misled because their contracts provided they would be billed in accordance with the workers' compensation laws, but the falsified forms ensured they were not billed in accordance with the workers' compensa-

tion laws. The TWCC was misled because the fees were billed in such a manner that the falsifications would not be detected.

We find the evidence is both legally and factually sufficient to show that Eureste engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. The trial court did not err in finding that Eureste violated Rule 8.04(a)(3).

### 3. Issues Regarding Representation of Granado

In his third issue, Eureste challenges the trial court's conclusions regarding his representation of Juan Granado. Specifically, the trial court found Eureste violated Texas Disciplinary Rules of Professional Conduct 1.01(b), 1.03(a) and (b) and 1.15(d).

### a. Rule 1.01(b)—Adequacy of Representation

■ Rule 1.01(b) prohibits a lawyer from neglecting a legal matter entrusted to the lawyer or frequently failing to carry out completely the obligations that the lawyer owes to a client. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01(b). As used in the rule, "neglect" means inattentiveness involving a conscious disregard for the responsibilities owed to a client. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01(c). Comment 6 to Rule 1.01 explains that having accepted employment, a lawyer should act with competence, commitment, and dedication to the interest of the client and with zeal in advocacy upon the client's behalf. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01 cmt. 6.

Granado's complaints against Eureste center on Eureste's failure to assist Granado in obtaining surgery on his right shoulder. In essence, Eureste argues he adequately represented Granado because there was nothing more for him to do when he withdrew. Eureste's contract with Granado provided that Eureste would represent Granado in connection with his "claim for workers' compensation benefits." Eureste contends the contract did not impose a duty to represent Granado in pursuing the surgery through Medical Review because Medical Review is not a benefit but a forum for resolving medical disputes after benefits have attached.

■ There are four types of benefits available to injured workers under the Texas Workers' Compensation Act: medical, income, death and burial. *Continental Cas. Insur. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 396 (Tex.2000). Medical Review is the "dispute resolution procedure for certain types of medical benefits disputes." *Id.* Eureste's contract did not specify that Eureste's representation would be limited or would not encompass Medical Review.

■ The record reflects that the statements and actions of Eureste and his staff led Granado to believe Eureste felt an obligation to assist him in obtaining the right shoulder surgery. The contractual relationship between an attorney and client, whereby the attorney agrees to render professional services for the client, may be express or implied from the parties' conduct. *Byrd v. Woodruff*, 891 S.W.2d 689, 700 (Tex.App.-Dallas 1994, writ denied). Although Eureste contends he repeatedly informed Granado that he could not represent him in Medical Review, the record contains evidence that neither Eureste nor his staff replied to Granado's requests for assistance with a statement that they could not assist him further. Instead, during the time Granado inquired about the surgery, Eureste told him to "be patient" because these matters "take time." The notes in Granado's file reflect that on November 4, 1997, Granado called Eureste's office and inquired if his shoulder was going to be treated. A staff

person responded that she would talk to the attorney and "find out what we can do." Eureste admitted that one could conclude from Granado's August 29, 1997, letter requesting Eureste's assistance that Granado thought Eureste had a duty to help him get his operation. Moreover, Eureste provided conflicting testimony regarding the extent of his duties. At trial, he denied he had a duty to represent claimants in Medical Review. However, he previously testified by deposition that "[m]aybe we have a duty, even though we cannot be compensating [sic] to continue to represent people at that level."

Finally, Eureste's contention that he had no duty to further assist Granado in obtaining surgery is controverted by his own withdrawal letter. Eureste wrote, "[p]lease attempt to seek the services of another attorney to represent you in your case. While having an attorney to represent you in workers' compensation claims in Texas is not required, I am convinced that legal representation in these matters is important." At that time, obtaining surgery to the right shoulder was the only benefit left to obtain in Granado's case. The letter acknowledges there was further work for an attorney to perform on Granado's case.

Therefore, the record contains sufficient evidence from which the trial court could conclude Eureste did not take appropriate steps to obtain Medical Review for Granado or otherwise assist him through that process.

We hold the evidence is both legally and factually sufficient to show neglect and failure to completely carry out Eureste's obligations to Granado. The trial court did not err in finding that Eureste violated Rule 1.01(b).

**b. Rules 1.03(a) and (b)—Communications with Granado**

▮ Rule 1.03(a) requires a lawyer to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(a). Rule 1.03(b) requires a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(b). Comment 2 to Rule 1.03 illustrates that it is not the quantity, but the quality and content of the communications that shows compliance with Rule 1.03. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 2. According to Comment 2, the guiding principle is that the lawyer should reasonably fulfill client expectations for information consistent with the duty to act in the client's best interests and the client's overall requirements as to the character of representation. *Id.*

As Eureste notes, the record shows numerous telephone conversations between Granado and Eureste's office. Eureste contends the only evidence of inadequate communication with Granado was Granado's testimony that he did not believe Eureste communicated with him enough. However, Granado assailed the quality as well as the quantity of Eureste's communication with him. It is clear from Granado's testimony that his expectations were not met. Granado testified that when he tried to call Eureste at his office, he was told Eureste was not there or was unavailable. Then, the staff in the Amarillo office became angry at Granado and told him: "you are supposed to come to us before you talk to him." However, the staff never explained to Granado what they were doing to help him. Instead, Granado testified the staff told him "you are just going to have to talk to Mr. Eureste. He is your lawyer." According to Granado, Eureste called him about four times, but Eureste

never told Granado what he was doing to help him obtain the operation. Most importantly, the communications between Granado and Eureste or his office led Granado to believe Eureste had an obligation to help him obtain the surgery. Granado was clearly left with the expectation that Eureste would help him obtain the surgery.

We find the evidence is both legally and factually sufficient to show Eureste failed to keep Granado reasonably informed. The trial court did not err in finding that Eureste violated Rule 1.03(a) and Rule 1.03(b).

### c. Rule 1.15(b)—Withdrawal from Representation

 Rule 1.15(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payments of unearned fees. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(d). Eureste contends his withdrawal complied with the requirements of Rule 1.15 in that he gave reasonable notice both verbally and in writing, allowed time for employment of other counsel, and returned Granado's file. He also contends that because Granado did not ask for the return of any unearned fees, he was in full compliance with Rule 1.15. We disagree with Eureste's contention that he complied with Rule 1.5.

There is evidence from which the trial court could reasonably infer that Eureste abruptly withdrew when there were no more benefits from which to extract attorney's fees. Eureste's withdrawal corresponded with the time that Granado's benefits ran out. Granado testified he did not even know the Amarillo office was being closed until he called the office and was informed he had reached the Houston office instead. He was also not informed that Eureste planned to withdraw until he was informed by a staff person that "Bernardo Eureste is going to drop you."

We find the evidence is legally and factually sufficient to show that Eureste failed to take reasonable steps to protect Granado's interests when Eureste withdrew. The trial court did not err in finding that Eureste violated Rule 1.15(b).

### d. Rule 8.04(a)(1)—General Violations

 In his fourth issue, Eureste challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that he violated Rule 8.04(a)(1). Rule 8.04(a)(1) is a general rule that prohibits a lawyer from violating, or knowingly assisting, inducing, or acting through another to violate the Texas Disciplinary Rules of Professional Conduct. TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1). All that is necessary to establish a violation of Rule 8.04(a)(1) is a violation of another rule. *See id.* We conclude that because the evidence is legally and factually sufficient to support the trial court's finding that Eureste violated Rules 1.01(b)(1), 1.01(b)(2), 1.03(a), 1.03(b), 1.04(a), 1.15(d) and 8.04(a)(3), the evidence is legally and factually sufficient to support the trial court's finding that Eureste violated Rule 8.04(a)(1).

### C. Sanctions

 Eureste contends in his fifth and final issue that the trial court abused its discretion when it ordered the sanction of suspension. Sanctions for professional misconduct may include disbarment, resignation in lieu of disbarment, indefinite disability suspension, suspension for a certain term, probation of suspension, interim sus-

pension, public reprimand, and private reprimand. TEX.R. DISCIPLINARY P. 1.06(T). A trial court has broad discretion to determine the consequences of professional misconduct. *Love v. State Bar of Texas,* 982 S.W.2d 939, 944 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994); *Curtis,* 20 S.W.3d at 234–35. However, the judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion. *Love,* 982 S.W.2d at 944; *Kilpatrick,* 874 S.W.2d at 659. An appellate court should only reverse the trial court's decision if an abuse of discretion is shown. *Love,* 982 S.W.2d at 944. A court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Furr's Supermarkets, Inc. v. Bethune,* 53 S.W.3d 375, 379 (Tex.2001); *Love,* 982 S.W.2d at 944. The court must consider the following factors in determining the appropriate sanction: (1) the nature and degree of the professional misconduct for which the respondent is being sanctioned; (2) the seriousness of and circumstances surrounding the professional misconduct; (3) the loss or damage to clients; (4) the damage to the profession; (5) the assurance that those who seek legal services in the future will be insulated from the type of professional misconduct found; (6) the profit to the attorney; (7) the avoidance of repetition; (8) the deterrent effect on others; (9) the maintenance of respect for the legal profession; (10) the conduct of the respondent during the course of the Committee action; (11) the

trial of the case; and (12) other relevant evidence concerning the respondent's personal and professional background. TEX.R. DISCIPLINARY P. 3.10; *Kilpatrick,* 874 S.W.2d at 659; *Curtis,* 20 S.W.3d at 235.

We find that in imposing the sanctions, the trial court did not act in an unreasonable and arbitrary manner or without reference to any guiding principles. To the contrary, the record shows the trial court considered the relevant factors outlined in Texas Rule of Disciplinary Procedure 3.10. In particular, the trial court found: (1) Eureste's actions were of a serious nature and degree; (2) the loss to Eureste's clients from their workers' compensation benefits was great; (3) the legal profession had been badly damaged by Eureste's conduct; (4) it is important to insulate future workers' compensation claimants and other clients from the risk of Eureste's billing practices; (5) Eureste profited greatly from his fraudulent billing scheme; and (6) other attorneys should be deterred from similar actions regarding their billing practices.

Eureste argues the sanction of suspension is unduly harsh because he has assisted many clients and his streamlined office procedures may have maximized client benefits. Eureste cites cases in which attorneys who committed allegedly more egregious conduct than Eureste received lighter sentences. However, the trial court had broad discretion in balancing the evidence in this case and applying it in terms of the statutory factors.[9] Considering the range of sanctions available to the court, the conduct at issue, and the trial

---

**9.** The trial court, in fact, specifically found Eureste genuinely believed his method of practicing was a means and manner to help people although he did so in the wrong way and that Eureste was cooperative during the disciplinary process. However pure Eureste's intentions may have been, the result of

his conduct was that he greatly profited at the expense of his clients whose workers' compensation checks were reduced by his illegal and unconscionable fees. One of his clients, Granado, suffered personally from Eureste's lack of adequate representation, while Eureste overbilled and profited from his case.

court's reasoning, we conclude the trial court did not abuse its broad discretion in imposing the sanction of suspension upon Eureste.

Accordingly, the judgment of the trial court is affirmed.