**Dell Edward JAMES, Appellant,**

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 05–05–01585–CV.

Court of Appeals of Texas, Dallas.

April 5, 2010.

Dell Edward James, Frisco, TX, pro se.

Susan Morgan Farris, Office of the Chief Disciplinary Counsel, William Scott Hastings, Locke, Liddell & Sapp, L.L.P., John Chapman, Dallas, TX, Linda A. Acevedo, Office of the Chief Disciplinary Counsel, Austin, TX, for Appellee.

Before Justices O'NEILL, LANG, and MYERS.

## OPINION

*Opinion By Justice MYERS.*

This is an appeal from a disciplinary proceeding in which the trial court found that appellant, Dell Edward James, violated the Texas Rules of Professional Conduct. After a two-day bench trial, the

court entered a judgment of public reprimand and restitution. In three issues, appellant argues there is legally and factually insufficient evidence to support the judgment and that the trial court abused its discretion by denying appellant's special exceptions to the Commission for Lawyer Discipline's (Commission's) pleadings, ordering appellant to make restitution, and awarding the Commission attorney's fees. We affirm the trial court's judgment.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant is a partner with the law firm of Carmody and James, P.C., which was employed by Barbara Churchman (Churchman) to handle a civil matter arising out of the sale of real estate. In March 1999, Churchman received a letter from her neighborhood architectural control committee (the committee) informing her that she needed to move her motor home, which had been parked in her driveway, because it violated neighborhood deed restrictions. In her trial testimony, Churchman claimed she was unaware of these deed restrictions because they were not provided to her when she closed on her house. In May 1999, she sought out appellant for legal advice. Churchman testified that she showed the committee's letter to appellant, and that he told her he would respond to the letter and try to "work something out" with the committee. Nothing, however, was "worked out" with the committee.

On June 26, 2000, appellant sent a demand letter to Louise Conover, the previous owner of Churchman's house, claiming Conover had misrepresented to Churchman that motor homes could be parked on the property. Appellant demanded damages and threatened to sue if the matter was not resolved. He did not send a copy of this letter to Churchman, according to her testimony. In a letter to appellant

dated August 29, 2000, Thomas Stauch, counsel for Conover, responded to appellant's letter by stating what he believed were the weaknesses in appellant's position. Among other things, Stauch asserted that "your allegation that Ms. Conover took advantage of your client's 'lack of knowledge, ability, experience or capacity to a grossly unfair degree' is simply ludicrous." Stauch also threatened to bring a counterclaim and a motion for sanctions against Churchman if the matter was not dropped. Appellant did not send a copy of this letter to Churchman and he did not, according to Churchman's testimony, advise her that opposing counsel was threatening sanctions and a counterclaim. On February 28, 2001, appellant filed suit against Conover and other parties in the 211th Judicial District Court of Denton County, Texas. Churchman testified that appellant never sent her a copy of the petition.

On May 17, 2001, Stauch responded to the original petition in a letter to appellant that reiterated his position that he considered the claims against Conover to be frivolous. Stauch also threatened that if Conover was not dismissed from the lawsuit within ten days, he would file a counterclaim against Churchman and a motion for sanctions against her, appellant, and appellant's law firm. As before, according to Churchman's testimony, appellant did not send her a copy of the letter and he did not inform her of its contents, including the threat of a counterclaim and sanctions.

Three months later, on August 17th, Conover's attorney filed an amended answer and counterclaim against Churchman. Four days after that, he filed a motion for sanctions against Churchman, appellant, and appellant's law firm. Among other things, both motions sought attorney's fees for the costs of defending

against Churchman's lawsuit. Churchman testified that appellant did not provide her with a copy of Conover's amended answer and counterclaim or motion for sanctions, and he did not inform her of their contents or tell her the documents had been filed. She also claimed he never discussed their possible ramifications with her, including the fact that she could be held liable to Conover for damages and sanctions.

Around this same time, appellant delegated responsibility for Churchman's case to another attorney in his firm, Laura Yates.[1] Yates testified that she had been employed by appellant's firm for "maybe a month" when appellant asked her to "take over handling that file." She recalled that she took over the case sometime in August 2001, and that the case file was returned to appellant in 2002. During that time, according to her testimony, Yates was the primary attorney on the case. As the primary attorney, Yates consulted with Churchman regarding discovery responses and helped her to prepare for her deposition. Prior to the deposition, Yates reviewed the "most recent" petition with her and "went over her discovery responses." Yates testified that she did not send Churchman a copy of the original petition "because by the time I took over the file the petition had already been filed and the case had been ongoing for some time."

Yates stated that most of her communications with Churchman occurred via telephone, and that she spoke to Churchman on the telephone "multiple times." Yates would usually call Churchman at one of her two business locations because Churchman was rarely at home. Although Yates sometimes had trouble contacting Churchman, she usually returned Yates's telephone calls within a couple of days. Yates maintained that she kept Church-

man "reasonably informed" about the pleadings that were filed in the case.

When asked at trial whether he acted in a "supervisory capacity" towards Yates, appellant stated he "was not Ms. Yate's [sic] supervising attorney." Churchman claimed she knew nothing of the reassignment and that she did not even know Yates was working on her case until Yates called her shortly before her deposition to tell her that appellant "couldn't be at the deposition" and that Yates "was standing in for him." As far as Churchman was aware, appellant was her "main attorney."

On September 26, 2001, Conover's attorney filed a second amended answer and counterclaim. Churchman testified she was not provided with a copy of this pleading or informed of its contents. By November 2001 Stauch had made, according to his trial testimony, "[m]any" verbal demands on appellant or the associates of his law firm to dismiss Conover from the lawsuit, none of which were heeded. On November 8th, he sent the following letter to Laura Yates:

I have repeatedly asked for your cooperation in obtaining a dismissal for my client. If there was any doubt about whether the filing of suit against my client was done in bad faith and in violation of Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code, Ms. Churchman's deposition removed that doubt. If I do not receive a notice of nonsuit of your client's claims against Ms. Conover by November 15, 2001, I intend to file a motion for summary judgment and, when granted, I will pursue every penny expended in attorneys' fees and expenses on behalf of Ms. Conover against your client and your law firm in accordance with the Rules.

1. At the time of trial, Yates was married and went by the name Laura Schmidt.

This charade has gone on long enough and its [sic] time to do the right thing. Please dismiss your client's claims against Ms. Conover immediately.

Churchman testified that she was never provided with a copy of this letter or advised of its contents.

On January 24, 2002, Conover moved for summary judgment as to Churchman's claims against her. As before, according to Churchman's testimony, she was not provided with a copy or this motion, advised of its contents, or counseled regarding the possible effects if the motion was granted. On March 15th, the court granted Conover's motion for summary judgment and dismissed Churchman's claims against her. Churchman testified she was not provided with a copy of the order or advised of its contents. Three days later, Stauch sent a letter to appellant's law firm enclosing a copy of the summary judgment order and stating that he was "conferring with my client regarding" the motion for sanctions and the counterclaim. Churchman claimed she was not provided with a copy of this letter or advised of its contents.

On May 13th, Conover filed an amended motion for sanctions against Churchman, appellant, and appellant's law firm. The motion sought attorney's fees in the amount of $21,189.91. On that same day, Conover moved for summary judgment on her counterclaim against Churchman.

The summary judgment motion asked for $21,189.21 in attorneys' fees and expenses. Churchman testified that she was not provided with a copy of either motion or informed of their contents.

When no response to the motion for summary judgment was filed, the court entered a June 20, 2002 order granting Conover's motion and awarding her a judgment against Churchman for $21,189.91. It was at this point, according to appellant's testimony, that he "came back into the case" and filed, on July 19th, a combined motion for the court to reconsider the award of attorney's fees and for new trial, which was denied. Churchman testified that appellant never provided her with a copy of the court's summary judgment order or advised her of its contents or its consequences.

On July 8th, eighteen days after the summary judgment order was signed, Jennifer Gray, an attorney at appellant's firm, wrote, at appellant's request, a letter to Churchman explaining that the court had granted Conover's motion for summary judgment. Gray noted the effect of the court's ruling was that Churchman had been ordered to pay "approximately $21,189.91 for Ms. Conover's attorney's fees."[2] This letter, however, did not have the correct zip code for Churchman's mailing address, and Churchman testified that she never received it. Gray noted that, both before and after sending the July 8th letter, she repeatedly attempted to contact

2. The letter also advised:
At this time, you have two options. First, we can represent you and appeal this ruling. We believe there is merit in appealing the Court's ruling. If you want to proceed with an appeal, you must contact us immediately and pay a retainer of $5,000.00. As a second option, we can begin negotiations with Ms. Conover's attorneys and try to negotiate down the judgment. Deadlines are approaching. We need a response from you by Monday, July 17th.

On July 9, 2002, Gray wrote to Stauch that [p]ursuant to our telephone conversation of this date, please be advised you [sic] that this office is in the processing [sic] of contacting our client, Barbara Churchman, to advise her of the Judgment for attorney's fees, which the Judge recently awarded. As deadlines are approaching, we will contact you as soon as we hear from our client about how we plan to proceed.

Churchman by telephone and Churchman did not return any of her calls.

On August 13th, according to Gray's testimony, Churchman called her to ask for "a complete copy of her file" so that it could be "reviewed by another attorney." During this telephone conversation, Gray recalled that she briefly explained to Churchman "the things we really have to get taken care of" and that time was "of the essence." Gray also learned that Churchman had not received a copy of the motion to reconsider because the office did not have her correct mailing address.[3] Although Churchman never mentioned the July 8th letter during the telephone call, Gray nonetheless believed, based on that conversation, that Churchman had received the letter despite the incorrect mailing address. After speaking to Churchman, Gray wrote a letter to Churchman enclosing copies of the motion to reconsider and the court's order granting Conover's motion for summary judgment. After mailing this letter, Gray continued to call Churchman but she did not return any of her telephone calls.

At Gray's request, a paralegal in appellant's firm mailed Churchman a copy of the first amended motion to reconsider the award of attorney's fees and first amended motion for new trial, which was filed on October 9, 2002. So far as Gray was aware, Churchman did not respond to the letter, which was mailed on October 7th, or return any of her telephone calls. From August 14th to mid-February of 2003, Gray estimated that she may have called Churchman as many as thirty times, and "possibly" as many as fifty times, but "never heard back from her and never spoke to her."

Churchman insisted that she was never contacted by Gray and that she did not "even know who Jenny Gray is." Churchman also testified that she did not recall receiving any messages from appellant that she did not respond to, and appellant knew her cellular telephone number of eleven years as well as her fax number. Churchman remembered calling appellant's office to ask for a copy of her file, but believed she spoke to a receptionist because "[t]hat's the only person you could get through to."

Churchman asserted that she first learned through a friend that she had "lost" the case, and she contacted appellant in June or July of 2002 to find out what was "going on." During this telephone conversation, appellant told her to calm down and explained that the judge was angry with him because he was "a small town judge" and appellant was "a big town attorney." Appellant did not explain what had happened, but he promised Churchman he was "going to take care of it." He also told her that if she did not "hear from [him], [then] it's been taken care of." This was appellant's last conversation with Churchman, according to her testimony.

After the court granted Conover's motion for summary judgment, Stauch repeatedly called appellant in an effort to settle the case. According to Stauch, appellant did not respond to his telephone calls. Churchman likewise testified that she was never told about the settlement inquiries. On September 12, 2002, the court granted Conover's motion for sanctions. The order held appellant's law firm jointly and severally liable with Churchman to Conover "for the first $8,686.12 of the $21,189.91 judgment previously granted in favor" of Conover. As before, according to Churchman, appellant did not

3. Gray testified that the incorrect mailing address was due to either an "office error or a miscommunication on what [Churchman's] zip code was."

provide her with a copy of the order or advise her of its contents.

In a September 13th letter to appellant, Stauch noted the court's orders granting sanctions and denying the motion to reconsider. He also stated:

The Court denied your Motion when you failed to appear yesterday for the hearing that was requested by you, or someone in your office. Despite receiving no notice of the hearing from you, I was advised of the hearing when my paralegal called to inquire as to the status of my proposed order granting sanctions. The person in your office responsible for scheduling the hearing apparently called the Court's coordinator on August 12 (when she advised the hearing was scheduled) and then neglected to advise you of the hearing, and certainly failed to provide me with notice of same.

Stauch indicated he was "still open to receiving a proposal of resolution of these issues, but the time for making such a proposal is running out." Appellant did not respond to this letter. According to Churchman, he did not provide her with a copy or advise her of the contents. Churchman testified that, at this point, she did not even know Stauch was offering to settle the case.

On December 20, 2002, Stauch sent appellant a copy of the final judgment to appellant for his approval. Gray responded in a January 7, 2003 letter that the final judgment was acceptable. Appellant did not provide Churchman, according to her testimony, with a copy of either the letter or the final judgment nor did he inform her of their contents.

On February 13th, the court entered a final judgment of $21,189.91 against Churchman. She testified that appellant never provided her with a copy of the final judgment and he did not advise her of its contents. On that same day, Stauch sent a letter to appellant enclosing a copy of the final judgment and noting the court had authorized an additional award of $10,000 in attorney's fees in the event of an appeal. Stauch stated that "[i]f your client would like to discuss a reasonable settlement of a $21,000 judgment in lieu of the very real risk of being stuck with a $31,000 judgment, please let me hear from you."

Appellant, however, did not respond to this letter nor did he provide a copy of the letter to Churchman or inform her of its contents, according to testimony provided by Churchman and Stauch. Stauch testified that he called appellant several more times and left messages on appellant's telephone voice mail inviting him to enter into settlement negotiations, and warning appellant that he would proceed with a writ of execution if appellant did not respond. Appellant did not respond to these inquiries and he never told Churchman, according to her testimony, about the telephone calls from Stauch. On August 22, 2003, a writ of execution was issued to enforce the judgment against Churchman.

Four days later, on August 26, 2003, at approximately 9:00 p.m., a constable arrived at Churchman's home to execute the judgment. Angry and confused, and not knowing how to contact appellant after business hours, Churchman frantically telephoned Kimberly Killebrew, another lawyer whom she knew, and asked if she knew appellant's cellular telephone number. After providing appellant's cellular number, Killebrew briefly explained the legal process to Churchman, including what a writ of execution was and why the constable was at her home. Churchman claimed she telephoned appellant in an effort to find out what was going on, but could not reach him.

On the following day, Killebrew went down to the courthouse on Churchman's

behalf to find out what had happened in her case. Killebrew checked out the court's case file and discovered that Churchman had been sanctioned by the court and a motion for summary judgment had been granted against her, and that her claims against Conover had been denied. While Killebrew examined the case file at the courthouse, Churchman testified that she continued to call appellant, but he did not return her telephone calls. Frustrated, Churchman eventually went down to appellant's office, retrieved her file, and reviewed it with Killebrew at Killebrew's office. It was at this point, according to Churchman's testimony, that she discovered what had happened in the case and saw letters, pleadings, and orders that were never provided or explained to her. Killebrew testified that when she reviewed the file that Churchman had retrieved from appellant's office, she found "very little correspondence between Ms. Churchman and [appellant] or the attorneys in his office," except for "a copy of one or two letters from [appellant's] office to Ms. Churchman."

Churchman subsequently paid $22,433.24 to satisfy the judgment against her. In September 2003, she filed a complaint against appellant with the Office of the Chief Disciplinary Counsel for the State Bar of Texas.

*Appellant's Testimony*

Appellant testified that he was licensed to practice law in 1997. He testified that he knew Churchman because she was the manager of the "executive suite" where his law offices were located, and that they "talked as personal friends all the time" because Churchman's office was "around the corner" from appellant's office. He also testified that, shortly after being notified by Churchman of the March 1999 letter she received from the committee demanding removal of the RV parked in

her driveway, he discussed with her the original purchase of the property, her requests for information regarding the various covenants and deed restrictions on the property, options for resolving the matter without litigation, and the possibility of building a garage on her property to house the RV. Before filing suit, they also discussed possible causes of action and who should be sued. Appellant noted, for example, that Churchman wanted to sue Conover, the seller, but did not want to file suit against Judy West, her real estate agent.

As a result of these discussions, the demand letters were sent to Conover and the other defendants shortly before suit was filed. Appellant noted that he consulted and advised Churchman regarding a settlement that was successfully negotiated with Commonwealth Land and Title Company (Commonwealth), one of the defendants in the case. Appellant testified that he assigned the case to Laura Yates sometime around May 17, 2001, when Conover filed her answer. Appellant stated that he and Churchman continued to have "contact off and on ... for a while" after he assigned the case to Yates. Appellant also testified that, from the time Yates took over the case as primary attorney until the court granted summary judgment, Churchman "never complained" and that "[s]he never said she didn't get anything" nor did she request any information. During the time his law firm represented her, appellant contended he received no letters or written correspondence from Churchman other than a September 3, 2003 letter demanding payment of $31,493.54. According to appellant, "[t]he only time [Churchman] ever made an allegation she didn't know [what was going on] was when she sent" him the "demand letter." Appellant pointed out that his home telephone number was list-

ed and that, furthermore, Churchman knew his cellular telephone number and "[a]ny time [she] called I took her call." Appellant asserted he had no reason to believe Yates was not communicating with Churchman and, based on his knowledge and review of the case, Yates kept Churchman reasonably informed concerning the status of the case.

After the trial court granted Conover's motion for summary judgment, appellant became "personally reinvolved" in the case and filed the motion to reconsider. Appellant recalled attending a hearing that was held on either June 20 or June 27, after which the court ordered sanctions against Churchman, appellant, and appellant's law firm, jointly and severally, for filing a frivolous lawsuit. After the trial court signed the sanctions order, appellant claimed he told Jennifer Gray to contact Churchman, "tell her what had happened," and "find out what she wants to do." Appellant testified that Gray attempted to call Churchman but she "wouldn't take her [telephone] calls." Gray later asked appellant to call Churchman. Appellant contended he personally made ten or fifteen telephone calls to Churchman and she did not respond to any of them. He also acknowledged, however, that he did not send Churchman any follow-up correspondence asking her to contact him, although he noted that other attorneys in his firm had done so.

Appellant testified that he believed he lacked the authority to dismiss the lawsuit against Conover on his own and Churchman never told him to dismiss the lawsuit nor did she authorize a dismissal. He contended that Stauch never made a monetary settlement offer to him and Churchman did not give him authority to make a settlement offer to Stauch. Appellant also testified at trial, in contrast to his deposition testimony, that he sent Churchman a copy of the pleadings, discussed the counterclaim with her, and sent her a copy of the final judgment.

*Procedural History*

On November 2, 2004, the Commission filed an original disciplinary petition and request for disclosure against appellant in the 296th Judicial District Court of Collin County. The Commission brought three claims against appellant based on violations of rules 1.03(a), 1.03(b), and 1.06(b)(1) of the Texas Disciplinary Rules of Professional Conduct (TDRPC). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03, 1.06, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar. R. art. X, § 9). On May 18, 2005, the Commission filed a first amended petition adding a claim that appellant violated TDRPC rule 1.02(a)(2). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02. On July 15, 2005, appellant moved for summary judgment on all four claims. On August 11, 2005, appellant withdrew the summary judgment motion as to the claims he violated rules 1.03(a) and 1.03(b). On that same day, the district court granted summary judgment for appellant on the claim he violated rule 1.06(b)(1), and deferred ruling on the claim he violated rule 1.02(a)(2).

On August 22 and 23, 2005, the district court held a bench trial on the remaining three claims. The court found that appellant violated TDRPC rules 1.03(a) and 1.03(b) but did not violate rule 1.02(a)(2). The court's findings noted, among other things, that Yates had never filed a formal appearance in the case and that "as a practical matter from the evidence that there was no express authority from Ms. Churchman that the case be assigned to some other attorney...." The court also found that the conduct that formed the basis for the rules violations did not occur between August 2001 and April 2002, when Yates "primarily handle[d] matters," and

that appellant violated the TDRPC in his handling of Churchman's case as to Conover, but not as to other parties. In particular, the court found that Churchman "was reasonably informed pertaining to Commonwealth negotiations, settlement offers, counteroffers and ultimate settlement of that claim."

The court then held an evidentiary hearing regarding the sanctions to be imposed. At the conclusion of that hearing, the court ordered the following sanctions: (1) public reprimand; (2) restitution to Churchman in the amount of $14,483.24; and (3) attorney's fees and costs to the Commission of $16,522.23. On October 5, 2005, appellant filed a motion for new trial, which was denied on November 16, 2005, after which he perfected this appeal.

## DISCUSSION

### Special Exceptions

In his first issue, appellant argues the trial court abused its discretion by (1) denying appellant's special exceptions to the Commission's pleadings and (2) finding the evidence was sufficient to hold that appellant violated rules 1.03(a) and 1.03(b) of the TDRPC.

Beginning with appellant's first contention, the issue is whether the Commission's first amended disciplinary petition provided appellant fair notice of what conduct was at issue or what relief was being sought. Appellant suggests the Commission used "vague and generic pleadings" that were "unclear" and "ambiguous." He argues the petition never specifically stated what matters he "failed to inform [Churchman] of, what matters [appellant] failed to explain to [Churchman], or what time period was in question." He also argues the Commission should have been required to specifically plead "what damages were being sought."

### Standard of Review

■■■ We review a trial court's ruling on special exceptions for an abuse of discretion. *Bader v. Cox,* 701 S.W.2d 677, 686 (Tex.App.-Dallas 1985, writ ref'd n.r.e.); *Johnson v. Davis,* 178 S.W.3d 230, 242 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). In making this determination, we review the pleadings and construe the petition liberally, accepting as true all the factual allegations set forth. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988).

### Applicable Law

■■■ A pleading's purpose is to give fair notice of a party's claims and the relief sought. *WorldPeace v. Comm'n for Lawyer Discipline,* 183 S.W.3d 451, 457 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). "In defining fair notice and in measuring the adequacy of a pleading against that standard, Texas courts consistently indicate that to force a party to plead his entire case, with exactness, is not concordant with the spirit of the Rules governing pleading." *Rodriguez v. Yenawine,* 556 S.W.2d 410, 414 (Tex.Civ. App.-Austin 1977, no writ). "Fair notice under the rules is met if an opposing attorney can ascertain the nature and basic issue of the controversy from the pleadings." *Hays County v. Hays County Water Planning P'ship,* 69 S.W.3d 253, 258 (Tex.App.-Austin 2002, no pet.); *see also Bader,* 701 S.W.2d at 677 ("The function of a pleading is to define the issues at trial, not to state evidence.").

As noted in the Commission's brief, the Texas Rules of Disciplinary Procedure (TRDP) provide the pleading requirements

for a disciplinary petition.[4] Specifically, rule 3.01 provides the following three requirements: (1) A description of the acts and conduct that gave rise to the alleged professional misconduct in detail sufficient to give fair notice to respondent of the claims made; (2) a listing of the specific rules of the TDRPC allegedly violated by the acts or conduct, or other grounds for seeking sanctions; and (3) a demand for judgment that the respondent be disciplined as warranted by the facts and for any other appropriate relief. *See* Tex.R. Disciplinary P. 3.01D, E, and F, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon Supp. 1997).

*Analysis*

■ Here, the Commission's first amended petition provided notice that the nature and basic issue of controversy in this case were that appellant had "failed to keep Churchman reasonably informed about the status of the lawsuit and failed to comply with Churchman's proper requests for information." More specifically, the petition alleged: (1) "[Appellant] failed to adequately prepare Churchman for her deposition, and subsequently failed to explain the consequences of Churchman's testimony"; (2) "[Appellant] failed to notify Churchman that a judgment had been taken against her"; (3) "[Appellant] failed to confer with complainant before agreeing to [an] offer [of settlement]" and signing off on the final judgment in the case; (4) "[Appellant] failed to notify Churchman of . . . offers" to settle the case after the final judgment had been entered; and (5) "[P]rior to filing suit, [appellant] did not discuss with Churchman the possibility of participating in mediation with the seller." Moreover, insofar as the "time period . . .

in question" is concerned, the petition stated that it concerned acts beginning "in or about May 1999, [when] Barbara Churchman . . . employed Respondent to represent her," and ended sometime after final judgment "was signed on February 13, 2003," when a writ of execution was served on Churchman. The petition, in other words, described the acts and conduct that gave rise to the alleged professional misconduct. *See id.* 3.01D. It stated the specific disciplinary rules that were allegedly violated by appellant. *See id.* 3.01E. It also requested "judgment that Respondent be disciplined, as the facts shall warrant; and that Petitioner have such other relief to which entitled, including direct expenses, costs of Court and reasonable attorney's fees and legal assistant fees." *See id.* 3.01F. The Commission was not required to allege in the petition every single instance in which appellant failed to communicate with Churchman; the concept of fair notice pleading simply does not require such a level of specificity. *See Rodriguez*, 556 S.W.2d at 414.

■ Turning to the question of whether the petition provided fair notice of the damages that were sought, we note it alleged that the case concerned appellant's misconduct in the handling of Churchman's case, and that this misconduct resulted in Churchman being subjected to a judgment in excess of $21,000. Further, the commission requested "judgment that [appellant] be disciplined, as the facts shall warrant; and that [the Commission] have such other relief to which entitled." Appellant admits that restitution is a sanction that is specifically authorized by the rules of disciplinary procedure. *See* Tex.R. Disciplinary P. 1.06Y (stating that the term

---

4. Appellant argues rule 47 of the Texas Rules of Civil Procedure controls the contents of a disciplinary petition, but TRDP rule 3.08B provides that the rules of civil procedure apply to disciplinary actions, except as varied by the rules of disciplinary procedure. *See* Tex.R. Disciplinary P. 3.08B.

"sanction" may include, among other things, restitution and payment of reasonable attorney's fees and all direct expenses associated with the proceedings). That appellant would be required to make restitution if the Commission prevailed on its claims was a foreseeable consequence of the allegations and relief requested in the first amended petition. *See Rivero v. Blue Keel Funding, L.L.C.,* 127 S.W.3d 421, 424–25 (Tex.App.-Dallas 2004, no pet.) (pleading supported judgment and provided fair notice of claim against party even though it did not include specific prayer for the relief granted).

■ Appellant suggests that the court could impose restitution only if a request for restitution was properly before the court. He cites no authority for this argument, however, nor are we aware of any legal authority preventing a court from imposing the sanction of restitution unless the Commission explicitly requested it in its pleadings. According to the rules of disciplinary procedure, the only pleading requirement for requesting sanctions is that the disciplinary petition must contain "[a] demand for judgment that the Respondent be disciplined as warranted by the facts and for any other appropriate relief." *See* TEX.R. DISCIPLINARY P. 3.01F. After a lawyer is found to have engaged in misconduct by the court, the determination of the appropriate sanction is left to the court's discretion. *See id.* 3.09 (if the court finds the respondent's conduct violated the rules of professional conduct, "the court shall determine the appropriate Sanction or Sanctions to be imposed."). We find nothing in the rules or case law cited by appellant to suggest that a court's ability to impose the sanction of restitution should depend on whether the Commission explicitly asked for restitution in its pleadings. Accordingly, we conclude the district court did not abuse its discretion by

denying appellant's special exceptions to the Commission's pleadings, and we overrule part (1) of appellant's first issue.

## Sufficiency of the Evidence

Turning to the second part of appellant's issue, he claims the trial court abused its discretion by finding the evidence was sufficient to conclude appellant violated TDRPC rules 1.03(a) and 1.03(b).

### Standards of Review

In a disciplinary action against an attorney, the Commission must prove its allegations by a preponderance of the evidence. TEX.R. DISCIPLINARY P. 3.08C; *see Curtis v. Comm'n for Lawyer Discipline,* 20 S.W.3d 227, 230 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In reviewing a judgment for legal sufficiency, the court "must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 807.

■ "When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding." *McIntyre v. Comm'n for Lawyer Discipline,* 169 S.W.3d 803, 806 (Tex. App.-Dallas 2005, no pet.). In conducting a factual sufficiency review, "we consider and weigh all the evidence in support of and contrary to the finding, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence

as to be clearly wrong and manifestly unjust." *Id.*

In making this review, we are not a fact finder. *Id.* We do not pass upon the credibility of the witnesses or substitute our judgment for that of the fact finder, even if a different answer could be reached upon review of the evidence. *Id.* The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Id.*

### Applicable Law

Rule 1.03(a) of the TDRPC provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(a). Rule 1.03(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* 1.03(b). "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued...." *Id.* 1.03 cmt. 1. "In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others." *Id.* 1.03 cmt. 2. "Comment 2 to Rule 1.03 illustrates that it is not the quantity, but the quality and content of the communications that shows compliance with Rule 1.03." *Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 200 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### Legal Sufficiency Analysis

Appellant argues the evidence presented by the Commission did no more than "create mere surmise or suspicion" that he violated rules 1.03(a) and 1.03(b). He contends Churchman "did no more than to say she was not aware of matters regarding her case," and she "never specified what matters she was not aware of."

According to the record, Churchman testified that appellant never told her about Conover's counterclaim or motion for sanctions, or explained their significance. She testified that appellant did not inform her that the district court had granted Conover's motion for summary judgment on the counterclaim or Conover's motion for sanctions. Churchman also testified that appellant never told her that a final judgment had been entered against her. In addition, she testified that appellant never told her about any of the multiple invitations from Stauch to settle the case, even those that occurred after final judgment had been entered against her. Testimony presented by appellant often contradicted testimony from Churchman, Killebrew, and Stauch. But the district court was free to believe the Commission's evidence instead of the evidence presented by appellant, and we are not in a position to second-guess those credibility determinations. Accordingly, we conclude the evidence is legally sufficient to support the judgment.

### Factual Sufficiency Analysis

Appellant argues that the verdict was clearly wrong and manifestly unjust because "ample evidence was presented at trial to demonstrate communications with [Churchman] in accordance with Rules 1.03(a) and 1.03(b)." He also contends Churchman's testimony was vague and elusive, inconsistent, contradicted by testimony from appellant's witnesses, and that Churchman was motivated by personal animus because appellant refused her demand that he pay her "over $31,000 to avoid having a grievance filed against him."

▮ We conclude there is factually sufficient evidence in this record to show that appellant violated rules 1.03(a) and 1.03(b) by failing to keep Churchman reasonably informed regarding the counterclaim, the sanctions, or the invitations from Stauch to settle the underlying litigation. Appellant refers to conversations that he and associates in his firm allegedly had with Churchman, and contends these communications show he kept her reasonably informed regarding the status of the case and that he explained relevant matters to her. However, "[i]t is not the quantity but the quality and content of the communications that shows compliance with Rule 1.03." *Eureste*, 76 S.W.3d at 200. The Commission correctly points out that many of the communications with Churchman that are cited in appellant's brief are not dispositive because they either occurred outside of the time frame noted by the trial court or had nothing to do with the alleged violations of rule 1.03. Appellant, for example, calls our attention to his extensive communications with Churchman regarding the settlement with Commonwealth, but appellant was not found to have violated rules 1.03(a) and 1.03(b) regarding that part of the underlying litigation.

Appellant's reliance on his testimony as well as testimony from Yates and Gray, two lawyers in his firm, does not alter our conclusion that the judgment is supported by factually sufficient evidence. Appellant calls our attention to his testimony that he repeatedly attempted to call Churchman and that he believed Yates and Gray were communicating with her regarding developments in the case. Appellant also relies on testimony from Yates, who stated that she kept Churchman reasonably informed, and testimony from Gray, who contended she was unable to speak with Churchman regarding the underlying litigation because Churchman repeatedly refused to return her telephone calls. But appellant acknowledged that he was not directly involved in Churchman's case for an extended period of time, and that he was not Yates's supervising attorney. Moreover, there is no evidence showing that Churchman authorized appellant to assign the case to Yates, who never filed a formal appearance in the case, or that Churchman was aware of the delegation of her case's responsibilities to Yates. As for Gray, Churchman testified that she had never talked to her and that she did not "even know who Jenny Gray is." The Commission, on the other hand, presented testimony that Churchman was not kept reasonably informed about the counterclaim, the sanctions, and the many invitations from Stauch to settle the underlying litigation. It was the role of the fact finder to resolve such conflicts and inconsistencies in the testimony of the witnesses. We therefore conclude the evidence is factually sufficient to support the judgment, and we overrule part (2) of appellant's first issue.

## Restitution

In his second issue, appellant argues the trial court abused its discretion by awarding restitution to Churchman because the Commission did not request restitution or any other form of relief for Churchman in its pleadings.

### Applicable Law

▮ A judgment must conform to the pleadings in the case. TEX.R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983). "In determining whether [a] judgment conform[s] to the pleadings, an appellate court should view the pleadings as a whole. A prayer for general relief will support any relief raised by the evidence and consistent with the allegations in the petition." *Raymond v. Raymond*, 190 S.W.3d 77, 83 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Khalaf v. Williams*, 814 S.W.2d 854, 858

(Tex.App.-Houston [1st Dist.] 1991, no writ)). "[O]nly relief consistent with the causes of action contained in the petition may be granted under a general prayer for relief." *Khalaf,* 814 S.W.2d at 858.

*Analysis*

▮ The Commission's first amended petition prayed for "judgment that Respondent be disciplined, as the facts shall warrant; and that Petitioner have such other relief to which entitled." This prayer for relief is consistent with the judgment ordering appellant to make restitution because restitution is a sanction that is specifically authorized by the TRDP. *See* TEX.R. DISCIPLINARY P. 1.06Y. In addition, the first amended petition alleged that the basis for the case against appellant was his failure to communicate and explain the legal proceedings to Churchman, and that this failure to communicate and explain resulted in a $21,189.91 judgment being entered against her. We conclude that the judgment imposing restitution conformed to the petition. We therefore overrule appellant's second issue.

## Attorney's Fees

In his third and final issue, appellant claims the trial court abused its discretion by awarding the Commission attorney's fees because it did not segregate the attorney's fees among the various claims in the case, despite appellant's request that it do so.

*Standard of Review and Applicable Law*

▮ Rule 1.06Y of the TRDP allows a district court to award attorney's fees as a sanction. *See* TEX.R. DISCIPLINARY P. 1.06Y. We review the sanctions imposed on an attorney for professional misconduct for abuse of discretion. *McIntyre,* 169 S.W.3d at 807.

▮ Generally, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). A court may award those fees that are "reasonable and necessary" for the prosecution of the suit. *Id.* "In order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Id.* However,

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'

*Id.* at 11. "Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Id.*

The Texas Supreme Court's decision in *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299 (Tex.2006), partially modified the holding in *Stewart Title.* In *Tony Gullo,* the court was faced with the issue of whether fees incurred on a fraud claim should have been segregated from fees incurred on breach of contract and DTPA claims. The court concluded that attorney's fees on the fraud claim were not authorized by either statute or contract and were unrecoverable, while the fees incurred on the contract claim and DTPA claim were recoverable. *See id.* at 310–11. Having concluded that the fees incurred on the fraud claim were unrecoverable, the court then determined that those fees should have been segregated out and that it was possible for the plaintiff's attorneys

to identify fees incurred on each asserted claim. *Id.* at 313. In so concluding, the court modified its holding in *Stewart Title* to the extent that

> if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.

*Id.* at 313–14.

*Analysis*

■ In this case, the Commission initially brought four claims against appellant and prevailed on two of them. During the evidentiary hearing concerning sanctions, the Commission requested $19,511.75 in attorney's fees and was awarded $12,400.

Appellant contends the Commission should have been required to segregate the attorney's fees regarding the two claims on which it did not prevail because "each of the four alleged rule violations are distinguishable causes of action with separate, often disparate, elements." In a case such as this one, however, where attorney's fees are recoverable on all of the claims brought by the Commission, *see* Tex.R. Disciplinary P. 1.06Y, the issue is whether those claims are dependent upon the same set of facts or circumstances, not whether they have similar or disparate elements.[5] *See Stewart,* 822 S.W.2d at 11.

As noted previously, appellant was found to have violated rules 1.03(a) and 1.03(b) of the TDRPC for failing to keep Churchman reasonably informed regarding the sanctions order, the counterclaim, and the overtures from Stauch to settle the underlying litigation. Appellant's handling of the sanctions and the overtures from Stauch likewise provided the factual basis for the other two claims against appellant, which were that he violated rules 1.02(a)(2) and 1.06(b)(1) of the TDRPC. In alleging that appellant violated rule 1.02(a)(2), which obligates a lawyer to communicate any settlement offer to a client in a civil case,[6] the Commission relied on the fact that Stauch made a number of overtures to appellant regarding settlement of the underlying litigation, appellant never responded, and he never informed Churchman about the invitations to settle. In alleging that appellant violated rule 1.06(b)(1), which concerns conflicts between the interests of a client and the lawyer's own interests,[7] the Commission relied on the fact that appellant never told Churchman about the sanc-

---

5. Appellant relies on *McAnelly v. Brady Medical Clinic, P.A.,* No. 03–04–00095–CV, 2004 WL 2556634 (Tex.App.-Austin Nov. 12, 2004, no pet.), to support his assertion that attorney's fees should be segregated if the claims involve separate elements. However, this reliance is misplaced. The court in *McAnelly* was clear that segregation was required in that case because the facts offered to establish the plaintiff's quantum meruit claim differed "substantially" from the facts offered to establish his contract and promissory estoppel claims. *Id.* at *4.

6. Rule 1.02(a)(2) provides that a "lawyer shall abide by a client's decisions ... [about] whether to accept an offer of settlement of a matter." Tex. Disciplinary R. Prof'l Conduct 1.02(a)(2). "[A] lawyer is obligated to communicate any settlement offer to the client in a civil case." *Id.* 1.02 cmt. 2. In addition, "[a] lawyer should consult with the client concerning any such proposal, and generally it is for the client to decide whether or not to accept it." *Id.* 1.02 cmt. 3

7. Rule 1.06(b)(1) prohibits a lawyer from representing a person if the representation of that person involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of the lawyer or the lawyer's firm. Tex. Disciplinary R. Prof'l Conduct 1.06(b)(1).

tions order and that he negotiated to have the sanctions against his law firm waived if he withdrew his motion for new trial. Therefore, all of the Commission's claims were based on the same operative facts or circumstances, and, accordingly, the trial court did not abuse its discretion in awarding attorney's fees. We overrule appellant's third issue.

We affirm the trial court's judgment.