**Affirmed and Opinion filed June 14, 2012.**



In The

# Fourteenth Court of Appeals
_____

## NO. 14-11-00370-CV
_____

**BOMA O. ALLISON, Appellant**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-28122**

---

## OPINION

This is a case involving professional misconduct. Appellant Boma Allison appeals the trial court's finding of professional misconduct and the imposed sanctions. We affirm.

### BACKGROUND

Benedicto Campos lived continuously in the United States from 1999 until 2008. In 2008, Campos left the United States to visit El Salvador, his home country. Upon

returning to the United States, Campos was detained by U.S. immigration authorities. Immigration authorities conducted a background check on Campos and found that in 2006, he was convicted of False Information, a third degree felony, for applying for a restaurant's liquor license on behalf of the actual restaurant owners who were ineligible for a license. Campos was deemed inadmissible due to his violation of the Immigration and Nationality Act, which bars the admission of "any alien convicted of . . . acts which constitute the essential elements of a crime involving moral turpitude."  8 U.S.C. § 1182(a)(2)(A)(i)(I).

On October 25, 2008, Campos was paroled with notice to appear in immigration court to defend his legal right to reside in the United States.  In November 2008, Campos hired attorney Allison to represent him in recovering his U.S. residency.  Both Campos and Allison received a letter from the immigration court, dated November 19, 2008, which set the hearing date for January 5, 2009.  On January 5, 2009, Allison attended the first immigration hearing with Campos.  During the hearing, the judge issued a written notice to appear in court for a second hearing on August 27, 2009.  Allison testified that at the first hearing, the judge gave two other dates orally: a biometrics[1] appointment date of February 27, 2009 and a deadline to file all relief applications by March 31, 2009.  The judge also "warned [Campos] in the presence of his counsel that any application not timely filed would be deemed abandoned."

It is undisputed that Allison filed no application by the March 31, 2009 deadline. The record further reveals that Campos made a number of payments to Allison for her services.  Allison testified during her bench trial that she assumed she would have until the scheduled hearing date—August 27, 2009—to make a final appeal to the judge. However, on July 1, 2009, the immigration court found that, as Campos failed to file a relief application by March 31, 2009, his applications for relief from removal were

---

[1] Biometrics is defined as the measurement and analysis of unique physical or behavioral characteristics, especially as a means of verifying personal identity.  *Biometrics*, MARIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/biometrics (last visited May 15, 2011).  Information obtained during a biometrics appointment allows the Department of Homeland Security to conduct a background check.

abandoned. The court ordered Campos removed from the country. On August 3, 2009, Allison filed motions to withdraw from her representation and reopen proceedings on behalf of Campos.

The Commission for Lawyer Discipline brought this attorney disciplinary action against Allison. The trial court found that Allison violated Rules 1.01(b)(1) and 1.15(d) of the Texas Rules of Disciplinary Procedure and ordered that she pay restitution to Campos in the amount of $1,950, pay attorney's fees and costs for the Commission, and attend six hours of ethics CLE and six hours of law practice management CLE. The trial court also ordered a partially probated suspension of six months with six weeks of active suspension from the practice of law. This appeal timely followed.

## DISCUSSION

In four issues, Allison contends: (1) the evidence was legally and factually insufficient to support the trial court's conclusions, (2) evidence of appellant's prior disciplinary hearings was improperly admitted in violation of appellant's motion in limine, and (3) the court's sanctions were too harsh.

### A. Sufficiency of the Evidence

Allison challenges the legal and factual sufficiency of the evidence to support the trial court's conclusions that Allison violated Rules 1.01(b) and 1.15 of the Texas Disciplinary Rules of Professional Conduct.

### 1. Standard of Review

In reviewing a challenge to the legal sufficiency of the evidence, we consider only the evidence and reasonable inferences that support the findings of the factfinder. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not do so. *Id.*

In reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both evidence in favor of and contrary to the challenged finding.

3

*Spring Creek Vill. Apartments Phase V, Inc. v. Gen. Star Indem. Co.*, 261 S.W.3d 206, 216 (Tex. App.—Houston [14th Dist] 2008, no pet.). We may not substitute our judgment for that of the jury and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id.*

**2. Violation of Rule 1.01(b)(1)—Neglect of a legal matter**

Allison argues generally that she did not neglect Campos's case and that the outcome was a result of his own uncooperative and nonchalant attitude. Allison further contends that Campos was responsible for remembering important dates and deadlines concerning his case.

Rule 1.01(b)(1) states: "In representing a client, a lawyer shall not neglect a legal matter entrusted to the lawyer." Tex. Disciplinary R. Prof'l Conduct 1.01(b)(1). A lawyer must pursue a matter on behalf of a client "despite opposition, obstruction or personal inconvenience to the lawyer." Tex. Disciplinary R. Prof'l Conduct 1.01 cmt. 6.

The record shows that Allison failed to file a relief application[2] or obtain an extension by the March 31, 2009 deadline. The immigration court's decision to remove Campos stated: "Based upon the Court's order, personal warning to the Respondent, and the Respondent's failure to timely file any relief application, the Court must deem, and hereby find that the Respondent has abandoned his application for relief from removal."

Allison testified that at the hearing Campos was made aware—through a translator—of the biometrics appointment and the deadline for filing the relief packet. Allison testified that it was Campos's obligation to attend his biometrics appointment. Campos testified that he did not know when his appointment date was and that Allison should have notified him of the time and place of the appointment. Regardless of whether Allison was responsible for keeping her client informed of his appointment date, according to Allison's testimony, the relief application could have been submitted even if the

---

[2] A relief application is filed with the immigration court and allows the respondent to provide documented evidence of why he is entitled to remain in the United States.

4

biometrics appointment had not been attended.

Allison testified at trial and now alleges on appeal that Campos was difficult to reach. However, the record reveals that Campos was successfully contacted on multiple occasions during the period of his representation. Upon receiving a letter from the immigration court on November 19, 2008, Campos personally delivered the letter to Allison. On another occasion, Campos filled out a biological information form requested by Allison's office and emailed the form to Allison's office via fax.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist] 2000, no pet.). The trial court could reasonably have concluded that Allison violated rule 1.01(b)(1). *See Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 199-200 (Tex. App.—Houston [14th Dist] 2002, no pet.) (finding that Rule 1.01 was violated when the attorney withdrew his representation when there was further opportunity for review). Allison's first point of error is overruled.

**3. Violation of Rule 1.15(d)—Protecting client's interests upon withdrawal of representation**

Allison contends that Campos hired three other attorneys after she withdrew from representing Campos and that they were unable to obtain an appeal of Campos's order of removal. Her argument appears to be an attempt to establish that her actions, in hindsight, did not have a materially adverse effect on the client.

Rule 1.15(d) states: "[U]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned." Tex. Disciplinary R. Prof'l Conduct 1.15. "In every instance of withdrawal . . . a lawyer must take all reasonable steps to mitigate the consequences to the client." Tex. Disciplinary R. Prof'l Conduct 1.15 cmt. 9. *See Hines v. Comm'n for Lawyer Discipline*, 28 S.W.3d 697, 701-02 (Tex. App.—Corpus Christi 2000, no pet.)

(finding that Rule 1.15 was violated when attorney failed to keep client reasonably informed, failed to file an appeal, and did not make it clear to the client that he had terminated his representation of her).

Campos testified that when he met with Allison on July 9, 2009, Allison informed him that the court had issued an order of his removal from the United States but did not give him any documents during their last meeting or mention to him the possibility of filing an appeal.[3] Allison's testimony was that Campos's version of the facts was a lie and that she did discuss an appeal with Mr. Campos during their last meeting. Nearly a month after their last meeting—on August 3, 2009—Allison submitted a Motion to Reopen Proceedings and the Motion to Withdraw. Campos testified that he received a copy of these documents only after retaining new counsel.

The trial court reasonably weighed the evidence and the credibility of the witnesses. Evidence that Allison's representation did not have a materially adverse affect on the ultimate disposition of the case is immaterial to the determination of whether Allison took reasonable steps to protect the client's interests upon withdrawing from representation. The evidence is sufficient for the trial court to conclude that Rule 1.15(d) was violated.

## B.    Motion in Limine

Allison further alleges that the trial court's admission of Allison's prior disciplinary hearings was in violation of Allison's motion in limine. A motion in limine is a procedural device that allows parties to identify, prior to trial, certain evidentiary rulings the court may be asked to make. *Weidner v. Sanchez*, 14 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions or introducing prejudicial evidence before the jury without first asking the trial court's permission. *Id.* Absent a jury, a motion in limine is irrelevant; therefore, a motion in limine is improper in a bench

---

[3] Campos testified that Allison told him the FBI was looking for him and that he had to leave the country.

trial. *See Unitarian Universalist Serv. of Boston v. Lebrecht*, 670 S.W.2d 402, 405 n.1 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *see also Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain*, 446 N.E.2d 626, 629 (Ind. Ct. App. 1983).

This was a bench trial. Allison's motion in limine was improper. Furthermore, the parties agreed to hear evidence on liability and sanctions in the same proceeding. Texas Disciplinary Rules of Professional Conduct Rule 3.10 specifically allows the admission of the respondent's disciplinary record, including any private reprimands, to determine the appropriate sanction to be imposed. The evidence of Allison's prior disciplinary hearings was properly admitted. Allison's second point of error is overruled.

## C. Sanctions

Allison contends that the evidence shows no client neglect on her part, and, therefore, the trial court erred in finding for the Commission, and the sanctions against her are unwarranted. Allison's contention that there was no neglect is a reassertion of her first point of error, which we have overruled. Nonetheless, we shall construe Allison's contention liberally as a challenge to the extent of the imposed sanctions.

Texas Disciplinary Rule of Professional Conduct 3.09 states: "[I]f the Respondent's conduct does constitute Professional Misconduct, the court shall determine the appropriate Sanction or Sanctions to be imposed." The trial court has broad discretion to determine the sanctions against an attorney guilty of professional misconduct. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994). A reviewing court may only reverse the trial court's decision if an abuse of discretion is shown. *Eureste*, 76 S.W.3d at 202. A court abuses its discretion only when it acts in an unreasonable and arbitrary manner or without reference to any guiding principles. *Id.*

In determining the appropriate sanction for attorney misconduct, a trial court must consider the nature and degree of the professional misconduct, the seriousness of and circumstances surrounding the misconduct, the loss or damage to clients, including potential loss or damage, the damage to the profession, the assurance that those who seek

legal services in the future will be insulated from the type of misconduct found, profit to the attorney, the avoidance of repetition, the deterrent effect on others, the maintenance of respect for the legal profession, the trial of the case, and other relevant evidence concerning the attorney's personal and professional background. Tex. Disciplinary R. Prof'l Conduct 3.10; *Kilpatrick*, 874 S.W.2d at 659; *see also Love v. State Bar of Tex.*, 982 S.W.2d 939, 945 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (taking into consideration potential damage to client in affirming sanctions order). The court's sanction of an attorney's conduct does not turn on any single act of the attorney but takes into consideration repeated and systematic patterns of misconduct. *Kilpatrick*, 874 S.W.2d at 659.

Allison argues Campos's deportation was not due to her neglect or professional misconduct because three other attorneys represented Campos on appeal after Allison withdrew from the case and Campos was still deported. However, we consider not only the actual but also the potential loss to the client resulting from an attorney's professional misconduct. *See Love*, 982 S.W.2d at 945. Thus, whether Campos ultimately would have been deported had Allison properly represented Campos has no bearing on whether Allison committed professional misconduct, and it is not germane to our analysis. Moreover, the posture of a case on appeal is different from its posture below: the loss of an appeal often does not reflect whether the underlying case would have been successful for a party with proper representation.

Here, the nature and degree of Allison's misconduct was serious. The court ordered Campos removed from the country because Allison failed to file Campos's relief application, and there is no evidence the relief application would have been denied. Deportation represented a substantial loss for Campos, including removal from his home and separation from his family. Allison's failure to file a relief application for Campos, failure to file an appeal, and withdrawal from the case all reflect poorly on the legal profession, and sanctions in this situation will help deter this type of misconduct in the future by Allison and others. Allison's attitude that her actions were justified because her client was going to be deported anyway also reflected a disregard for her professional

8

responsibilities. Moreover, Allison's history of violating disciplinary rules by settling a case on behalf of a client without the client's consent—and thus making decisions that are beyond the scope of her authority—illustrates a pattern of disregarding professional responsibilities to her clients.

The trial court did not abuse its discretion in awarding sanctions against Allison. The third point of error is overruled.

## CONCLUSION

Because we have concluded that the evidence is legally and factually sufficient, the motion in limine was improperly raised during the bench trial proceeding, and the sanctions were not unjust, the judgment of the trial court is affirmed.

/s/          Martha Hill Jamison
                 Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

9