

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00267-CV

Joe Jesse **PONCE** III,
Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-04768
Honorable Mary C. Brown, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: May 25, 2022

AFFIRMED

Joe Jesse Ponce III appeals the trial court's judgment disbarring him from the practice of law.  We affirm the trial court's judgment.

### BACKGROUND

In August 2016, Kathy Alcala signed a contingency fee contract with Pascual Madrigal so that Madrigal could represent her in a legal matter relating to the death of Alcala's son in a motor vehicle accident.  Ponce was licensed to practice law in Texas, and in January 2017, he began working at the Law Office of Pascual Madrigal, under an agreement that Ponce would assist

Madrigal with his immigration, criminal, and personal injury cases in exchange for compensation. Ponce testified that in that same month, Alcala went to Madrigal's office seeking to terminate Madrigal, and that Madrigal asked Ponce to meet with her. Ponce told Alcala that Madrigal wanted him to work on her case. On January 26, 2017, Alcala signed a second contingency fee contract for the same case with Ponce. Ponce testified that he asked Alcala to enter into this contract with him because he "didn't trust Mr. Madrigal to pay [him]."

Several months later, Ponce stopped working with Madrigal and testified that he had notified Alcala when he left Madrigal's office. In March 2017, Alcala told Ponce that she wanted to hire another attorney and did not want to work with him anymore. Ponce testified that Alcala asked him to sign a letter of release and asked for her file back. He testified that he never returned any documents to her.

In April 2017, Alcala filed a grievance with the Office of Chief Disciplinary Counsel against Ponce, and Ponce responded. In March 2018, the Commission for Lawyer Discipline (the "Commission") initiated a disciplinary action against Ponce for violations of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT. After a bench trial, the trial court found Ponce committed misconduct in violation of Rules 1.03(a), 1.03(b), 1.08(a), 1.15(d), and 8.04(a)(3). *See id.* The trial court issued findings of fact and conclusions of law in support of the judgment. As a sanction, the trial court disbarred Ponce and ordered him to pay the State Bar of Texas $872.42 in attorney's fees. This appeal followed.

## SPECIFIED ADDITIONAL OR AMENDED FINDINGS

In his first issue, Ponce argues the trial court failed to make findings of fact on the allegations of professional misconduct in support of the judgment of disbarment. Although the trial court made findings of fact, Ponce contends the findings of fact are not specific enough to constitute valid findings of fact. We hold that Ponce has waived this complaint for review.

Texas Rule of Civil Procedure 298 provides that, after a trial court files original findings of fact and conclusions of law, "any party may file with the clerk of the court a request for specified additional or amended findings or conclusions." TEX. R. CIV. P. 298. "The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court." *Id.* When a party makes an untimely request for additional findings and conclusions, the party waives the right to complain on appeal of the trial court's refusal to enter the additional findings or conclusions. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 381 (Tex. App.—Dallas 2013, no pet.).

In this case, the trial court issued its findings of fact and conclusions of law on March 22, 2020. Ponce did not file a request for additional findings of fact and conclusions of law. *See* TEX. R. CIV. P. 298. Instead, Ponce had challenged "anticipated" findings and conclusions in his motion for new trial; a motion for new trial cannot be construed as a timely request for additional findings or conclusions. *See Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 937 S.W.2d 60, 82 n.5 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998) (appellant waived any right to complain about omitted or incorrect findings even though appellant objected to the trial court's findings in its motion for new trial); *see also Alvarez v. Espinoza*, 844 S.W.2d 238, 242 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) ("A bare request is not sufficient; proposed findings must be submitted."). Ponce thus waived his complaint that the trial court's findings of fact were not sufficiently specific. *See In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 381 (appellant waived complaint on appeal to file request for additional findings of fact within ten days after the trial court signed original findings and conclusions); *see*

*also Luna v. Pickel*, No. 02-19-00371-CV, 2020 WL 5949927, at \*13 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op.).[1]

### LEGAL AND FACTUAL SUFFICIENCY

In his second through sixth issues, Ponce challenges the legal and factual sufficiency of the evidence to support the trial court's findings that he violated disciplinary rules.[2] We review the legal and factual sufficiency of the trial court's findings in a bench trial in the same manner as the jury's findings in a jury trial. *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 679 (Tex. App.—San Antonio 1998, no pet.). In reviewing the legal sufficiency of evidence to support a specific finding of fact, we consider all the evidence in the light most favorable to the finding and disregard all contrary evidence and inferences. *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We will uphold the finding if there is more than a scintilla of evidence to support it. *Id.* If we determine the evidence is legally sufficient, we must then determine whether it is factually sufficient. *Id.* In doing so, we no longer consider the evidence in the light most favorable to the finding; instead, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility, and the court may choose to believe one witness over another. *Crampton*, 2022 WL 961557, at \*5. We may

---

[1] In his reply brief, Ponce contends he does not have a burden to request findings on grounds proffered by the opposing party. However, Rule 298 provides that "*any party* may file with the clerk of the court a request for specified additional or amended findings or conclusions." TEX. R. CIV. P. 298 (emphasis added). Ponce, as appellant, has the burden to demonstrate reversible error in the trial court. *See* TEX. R. APP. P. 33.1(a).

[2] Ponce frames his issues as challenging the sufficiency of the evidence to show disciplinary rule violations. We construe his complaint as a challenge to specific findings of fact relevant to a disciplinary rule. *See Crampton v. Comm'n for Lawyer Discipline*, No. 01-20-00249-CV, 2022 WL 961557, at \*5 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet. h.) (mem. op.) (examining whether evidence supported specific findings of fact when appellant argued Commission did not present sufficient facts to support its allegations that appellant violated specific disciplinary rules).

not substitute our judgment for that of the trial court. *Id.* We review de novo a trial court's conclusions of law. *Id.* An appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.* at \*6. We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.*; *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) ("If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal.").

### A. Rule 1.03(a) and (b)—Communication with Alcala

Ponce first argues there is insufficient evidence to establish a violation of Disciplinary Rule 1.03(a) and (b). The second and third conclusions of law provide that Ponce violated Rule 1.03(a) and (b). The first finding of fact, relevant to Rule 1.03(a), provides that Ponce "failed to keep his client Kathy Alcala reasonably informed about the status of her legal matter and failed to promptly comply with her reasonable requests for information." The second finding of fact, relevant to Rule 1.03(b), provides that Ponce "failed to explain a matter to Kathy Alcala to the extent necessary to permit Ms. Alcala to make informed decisions regarding the representation." Rule 1.03(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(a). Rule 1.03(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* R. 1.03(b). Comment 2 to Rule 1.03 illustrates that it is not the quantity, but the quality and content of the communications that shows compliance with Rule 1.03. *See id.* R. 1.03 cmt. 2; *Eureste v. Comm'n For Lawyer Discipline*, 76 S.W.3d 184, 200 (Tex. App.—Houston [14th Dist.] 2002, no pet.). According to Comment 2, "[t]he guiding principle is that the lawyer

should reasonably fulfill client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 2.

The record shows that Ponce and Alcala first met on January 6, 2017, and the attorney-client relationship was created when Alcala signed a contingency fee agreement with Ponce. *See Honeycutt v. Billingsley*, 992 S.W.2d 570, 581 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for the client[, and the] relationship may be expressly created through a contract or it may be implied from the actions of the parties."). Alcala testified that after this first meeting, Ponce told her they would need to meet again to gather information necessary to file a lawsuit. After their initial meeting, Alcala called Ponce's office several times and never received a call back. According to Alcala, there was no progress being made on the case, and Ponce would rarely communicate with her. When he did, Ponce would not provide her any update on her case. Unable to speak with Ponce, she began texting him. Screenshots of text messages between Ponce and Alcala introduced at trial show that Alcala texted Ponce on February 10, 2017 asking for a status update on her case, and that Ponce responded "I will call you this evening." Alcala testified that Ponce never called her. Additional text messages show that on February 13, 2017, Alcala texted Ponce, "I did not get my phone call returned Friday evening. Please follow up." The screenshots of text messages show no response until March 29, 2017, after Alcala texted Ponce that she did not want him as her lawyer anymore.

Ponce argues that there was not a complete absence of communication because Ponce and Alcala spoke on the phone once and exchanged several text messages. Rule 1.03 focuses on the quality and content of the communications, not the quantity. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 2; *see also Eureste*, 76 S.W.3d at 200 (evidence legally and factually sufficient

to show appellant failed to keep client reasonably informed when there were numerous telephone conversations between attorney and client, but quality of communication was low and attorney never told client what he was doing to help him in the case). On this record, the quality of communication between Ponce and Alcala was low, and as Alcala testified, her expectations were not met. *See Eureste*, 76 S.W.3d at 200–01 (taking client's expectations into consideration when determining the level of the quality between attorney and client under Rule 1.03); *James v. Comm'n for Lawyer Discipline*, 310 S.W.3d 598, 612 (Tex. App.—Dallas 2010, no pet.) (evidence was legally and factually sufficient to show that appellant violated Rules 1.03(a) and (b) where both the quantity and quality of communications failed to keep client reasonably informed about case to satisfy compliance with Rule 1.3).

We therefore conclude that Findings 1 and 2 are supported by legally and factually sufficient evidence.

### B. Rule 1.08(a)—Full Disclosure Upon Entering into Business Transaction

Ponce next argues there is insufficient evidence to establish a violation of Disciplinary Rule 1.08(a). The fourth conclusion of law provides that Ponce violated Rule 1.08(a). The third finding of fact, relevant to Rule 1.08(a), provides that "[o]n January 26, 2017, [Ponce] entered into a business transaction with Kathy Alcala and acquired an interest in her legal claims on terms that were not fair and reasonable to Ms. Alcala, that were not fully disclosed in a manner which could be reasonably understood by Kathy Alcala and Ms. Alcala was not given a reasonable opportunity to seek the advice of independent counsel in the transaction." Rule 1.08(a) provides that "[a] lawyer shall not enter into a business transaction with a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client; (2) the client is given a reasonable

opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08(a).

Alcala testified that when she met Ponce on January 26, 2017, she had already signed a contingency fee agreement with Madrigal for representation on the case regarding her son's death in the automobile accident. Ponce was working at Madrigal's office at the time and was aware that Alcala had already signed a contract with Madrigal. When Alcala met Ponce, he asked her to sign another contingency fee agreement with himself so that he could help Madrigal with the case. Alcala testified that Ponce did not explain the consequences of her retaining a second lawyer on a contingency fee basis and that Ponce would separately get a percentage of any settlement or award on the case. Alcala also testified that Ponce did not tell her to take any time to consider the contract or ask her to talk to another lawyer about the contract. Alcala then proceeded to sign the contingency fee agreement with Ponce, binding her to two concurrent contingency fee agreements.

Ponce first argues that the evidence is insufficient to establish a violation of Rule 1.08(a) because Alcala was not a client of Ponce when she signed the contingency fee agreement on January 26, 2017. To find a violation of Disciplinary Rule 1.08(a), the trial court must first find an attorney-client relationship existed at the time of the business transaction. *Rosas v. Comm'n for Lawyer Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). "The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for the client." *Id.* (citation omitted). "The attorney-client relationship may be either express or implied from the conduct of the parties." *Id.* (citation omitted). "The parties must manifest an intention to create an attorney client relationship." *Id.* (citation omitted).

The evidence supports a finding that an attorney-client relationship existed at the time Ponce asked Alcala to sign a separate contingency fee agreement with Ponce. Ponce had previously informed Alcala he had agreed to assist Madrigal on the matter involving her son's

death. Having agreed to render professional services to Alcala, an attorney-client relationship had already existed at the time Ponce asked Alcala to sign a separate contingency agreement. *See id.* There is also evidence that Ponce failed to fully disclose to Alcala the consequences of her entering into a separate contingency fee agreement with him, after having already entered into a contingency agreement for the same case with Madrigal. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08(a)(1).

Therefore, Finding 3 is supported by legally and factually sufficient evidence.

### C. *Rule 1.15(d)—Protecting Client's Interests Upon Termination of Representation*

Ponce next argues there is insufficient evidence to establish a violation of Disciplinary Rule 1.15(d). The fifth conclusion of law provides that Ponce violated Rule 1.15(d). The fourth finding of fact, relevant to Rule 1.15(d), provides that "[u]pon the termination of his representation, [Ponce] failed to surrender papers and property which Kathy Alcala was entitled to receive." Rule 1.15(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation." *Id.* R. 1.15(d).

At trial, Margaret Navarro, the receptionist at Madrigal's office, testified that she prepared the file for Alcala's case. There were photos of the automobile accident, a contract between Alcala and Madrigal, notes that Madrigal made when he went to visit Alcala, Madrigal's "investigation notes," an accident report, and documents from the medical examiner's office. Navarro testified that files such as Alcala's were kept in binders, labeled for each client and stored at the office. She testified that Ponce took Alcala's file and that she did not see the file again. When Alcala requested

the file from Madrigal's office, Navarro searched for it and could not find it at the office. She called Ponce to see if he had the file, and he confirmed that he did. Alcala testified that after hiring Madrigal, she provided his office with several documents including an autopsy report of her son, a contract from the car dealership where her son had purchased his vehicle, a police report, information from the life insurance policy for her son, and photographs of her son.

Ponce testified that in March 2017, Alcala notified him that she wished to terminate his representation and would hire a different attorney. He testified that Alcala asked him to sign a letter of release and asked for her file. The record contains a letter from Alcala sent to both Ponce and Madrigal indicating that she did not wish to be represented by either on her case because the service she had received was unsatisfactory. In the letter, Alcala requested that her file be released to her, and she requested a release of their respective liens. Ponce admitted that he never returned any documents to Alcala, and Alcala testified that Ponce never returned her case file. She also testified that Madrigal's office informed her they could not find her file and that Ponce had taken it when he was working on the case. Alcala's husband, Jesse Navarro, testified that Ponce told him he had the case file when he was attempting to meet Jesse and Alcala to convince Alcala not to terminate his representation.

Contrary to Jesse's and Alcala's testimony, Ponce testified that he did not have Alcala's file and that he was unaware of where the file was. The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Allison v. Comm'n for Lawyer Discipline*, 374 S.W.3d 520, 525 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The trial court could reasonably have believed Alcala's and Jesse's testimony that Ponce had possession of Alcala's file at the time she terminated representation. *See id.* The record also contains screenshots of text messages between Alcala and Ponce that evidence Ponce messaged Alcala after his termination that he would like to schedule a meeting to return her file.

- 10 -

We hold there is sufficient evidence to support a finding that upon termination of representation, Ponce failed to take the steps to the extent reasonably practicable to protect Alcala's interests because he failed to return her client file. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(d); *Robins v. Comm'n for Lawyer Discipline*, No. 01-19-00011-CV, 2020 WL 101921, at *13 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, pet. denied) (mem. op.) (commission met its burden of establishing prima facie case that attorney violated Rule 1.15 by failing to return client's file); *see also In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013) (orig. proceeding) ("To whom does a client's file belong? The client's file belongs to the client."); *In re George*, 28 S.W.3d 511, 516 (Tex. 2000) (orig. proceeding) ("The attorney is the agent of the client, and the work product generated by the attorney in representing the client belongs to the client.").

Therefore, Finding 4 is supported by legally and factually sufficient evidence.

### D. Rule 8.04(a)(3)—Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation

Ponce next argues there is insufficient evidence to establish a violation of Disciplinary Rule 8.04(a)(3). The sixth conclusion of law provides that Ponce violated Rule 8.04(a)(3). The fifth finding of fact, relevant to Rule 8.04(a)(3), provides that Ponce "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in connection with his representation of Kathy Alcala." Rule 8.04(a)(3) provides that "[a] lawyer shall not: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3). Fraud is defined under the rules as conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information. *Id.* Any conduct involving dishonesty, deceit, or misrepresentation is also prohibited by Rule 8.04(a)(3). *See id.*

The evidence reflects that when Alcala met Ponce at his office, he presented her with a contingency fee agreement to sign—even though he was aware that she had already signed a contingency agreement with another attorney. Ponce did not explain the consequences of Alcala

entering into two separate contingency fee agreements. Alcala testified that she was not aware that signing a second contingency fee agreement meant that Ponce would receive a percentage of the award, separate and in addition to Madrigal's percentage. She testified that Ponce did not advise her on this point and did not ask her to take time to consider the contract.

The evidence also showed that Ponce falsely represented to Alcala that he had prepared and filed suit on Alcala's claim. The text message screenshots between Alcala and Ponce show that on March 29, 2017, Ponce texted Alcala and asked whether she had talked to Madrigal and whether she was "wanting him back as [her] lawyer." Ponce stated in his text message that he "put [the lawsuit] together," and stated, "I'm filing it in State District [C]ourt." Jesse testified that once Alcala informed Ponce that she wished to terminate his representation, Ponce texted Jesse asking to meet in an effort to convince Jesse and Alcala not to terminate Ponce's representation. Jesse testified that Ponce had informed him that he had already filed the lawsuit and gave him the court number, although he never saw proof of filing. Ponce admitted at trial that he never actually put a lawsuit together.

On this record, there is sufficient evidence to support a finding that Ponce engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Rule 8.04(a)(3). *See Eureste*, 76 S.W.3d at 198–99 (evidence legally and factually sufficient where record revealed that attorney misled client because their contracts provided they would be billed a certain way, and they were later billed a different way); *Brown*, 980 S.W.2d at 680 (dishonesty established where attorney sent client's medical provider letter agreeing to pay upon recovery from the insurance company, but instead deposited recovery into a joint account to further attorney's own interests). Therefore, Finding 5 is supported by legally and factually sufficient evidence.

We conclude there is more than a scintilla of evidence to support determinations that Ponce: failed to keep his client reasonably informed about the status of a matter (Rule 1.03(a));

failed to explain a matter to his client to the extent reasonably necessary for her to make informed decisions regarding representation (Rule 1.03(b)); entered into a business transaction with his client with terms that were not fair and reasonable to the client and without fully disclosing the terms to the client in a manner which could be reasonably understood by her (Rule 1.08(a)); failed to take the steps to the extent reasonably practicable to protect his client's interests upon termination of representation (Rule 1.15(d)); and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation (Rule 8.04(a)(3)). After reviewing all the evidence pertinent to this representation, we conclude that the evidence necessary to support violations of the above-noted rules is not so weak as to render the fact findings clearly wrong or manifestly unjust. *See Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 388 (Tex. App.—Dallas 2003, pet. denied).

### SANCTION OF DISBARMENT

In his final issue, Ponce contends the trial court abused its discretion in rendering the sanction of disbarment because it was an excessive sanction based on the evidence of his misconduct before the court. A trial court has broad discretion to determine the consequences of professional misconduct. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *Rosas*, 335 S.W.3d at 320. "The violation of one disciplinary rule is sufficient to support a finding of professional misconduct." *Cantu v. Comm'n for Lawyer Discipline*, No. 13-16-00332-CV, 2020 WL 7064806, at *20 (Tex. App.—Corpus Christi Dec. 3, 2020, no pet.) (mem. op.). The judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion. *Kilpatrick*, 874 S.W.2d at 659. We will reverse the trial court's decision concerning the consequences of professional misconduct only if an abuse of discretion is shown. *Rosas*, 335 S.W.3d at 320. Generally, a trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1986). "The mere fact that a trial court

may decide a matter differently than an appellate court does not demonstrate an abuse of discretion." *Cantu*, 2020 WL 7064806, at *20 (citing *Downer*, 701 S.W.3d at 242).

Rule 3.10 of the Texas Rules of Disciplinary Procedure sets forth factors for trial courts to consider in determining the appropriate sanctions for misconduct.[3] *See* TEX. R. OF DISCIPLINARY P. 3.10. To determine the appropriate sanction, the trial court must consider: (A) the nature and degree of the misconduct for which the attorney is being sanctioned; (B) the seriousness of and circumstances surrounding the professional misconduct; (C) the loss or damage to the client; (D) the damage to the profession; (E) the assurance that those who seek legal services in the future will be insulated from the type of professional misconduct found; (F) the profit to the attorney; (G) the avoidance of repetition; (H) the deterrent effect on others; (I) the maintenance of respect for the legal profession; (J) the conduct of the respondent during the course of the Committee action; (K) the trial of the case; and (L) other relevant evidence concerning the attorney's personal and professional background. *Id.*; *see Cantu*, 2020 WL 7064806, at *20.

The Texas Supreme Court has held that a court need only consider the Rule 3.10 factors in sanctioning an attorney. *Kilpatrick*, 874 S.W.2d at 659; *Eureste*, 76 S.W.3d at 202. Moreover, a court is not required to find that every Rule 3.10 factor has been satisfied before ordering disbarment. *See Eureste*, 76 S.W.3d at 202 (discussed evidence that addressed only six of the twelve factors in concluding trial court had considered the relevant factors outlined in Rule 3.10); *see also Minnick v. State Bar of Tex.*, 790 S.W.2d 87, 93 (Tex. App.—Austin 1990, writ denied) (concluding trial court was within its discretion in ordering disbarment when some of the Rule

---

[3] On August 28, 2018, the Texas Supreme Court deleted the factors listed in Rule 3.10 and replaced its substance by Part XV. The amendment to the Texas Disciplinary Rules of Procedure is only effective for grievances filed on or after June 1, 2018. *See* Texas Supreme Court Corrected Order Giving Final Approval of Amendments to the Texas Rules of Disciplinary Procedure, Misc. Docket No. 18-9112 ("A grievance filed before June 1, 2018 will be governed by the rules in effect at that time."). The grievance in this case was filed in April 2017, and we therefore apply the factors and text listed in Rule 3.10 prior to the August 2018 amendment.

3.10 factors were the subject of disputed evidence and others weighed in attorney's favor). A court is not required to hold an evidentiary hearing, or to take evidence on these factors. *See Kilpatrick,* 874 S.W.2d at 659 ("The court may, in its discretion, hold a separate evidentiary hearing and take evidence on these issues."). In addition, the Respondent's disciplinary record, including any private reprimands, is admissible on the appropriate sanction to be imposed. TEX. R. OF DISCIPLINARY P. 3.10; *James*, 310 S.W.3d at 595. Sanctions for professional misconduct may include disbarment, resignation in lieu of disbarment, indefinite disability suspension, suspension for a certain term, probation of suspension, interim suspension, public reprimand, and private reprimand. TEX. R. DISCIPLINARY P. 1.06(FF).

In its judgment of disbarment, the trial court found that Ponce violated Rules 1.03(a), 1.03(b), 1.08(a), 1.15(d), and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct. Under the "sanction" section, the trial court noted having heard and considered additional evidence and the Rule 3.10 factors in determining the appropriate sanctions to be imposed against Ponce and ordered disbarment.

As determined above, the evidence in this case was sufficient to support the trial court's findings that Ponce violated five different disciplinary rules. The trial court heard evidence of the seriousness and degree of misconduct for these different violations. *See id.* R. 3.10(A)–(B). Ponce's license was previously suspended at the time of trial and the Commission introduced evidence that Ponce had a history of previous reprimands, probated suspensions, and had his probation revoked.[4] *See id.* R. 3.10(G); *James*, 310 S.W.3d at 595 (considering evidence of

---

[4] This evidence included: a judgment of private reprimand from October 2006 for violations of Rules 1.06(b)(2) and 1.08(a); a judgment of private reprimand from November 2012 for a violation of Rule 1.06(V); a judgment of probated suspension from November 2013 for violations of Rules 1.01(b)(1), 1.03(b), 1.14(a), and 1.15(d); a judgment of partially probated suspension from July 2017 for a violation of Rule 8.04(a)(7); a judgment of partially probated suspension from May 2019 for a violation of Rule 1.06(W); an order revoking Ponce's probation from October 2019, effective from November 22, 2019 to October 21, 2020; and an order revoking probation and actively suspending

appellant's previous public reprimand when ordering disbarment); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 349–50 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (considering appellant's lengthy disciplinary record from 1993 through 2005 when ordering disbarment).

The trial court heard evidence that Ponce stood to benefit from his misconduct. *See* TEX. R. OF DISCIPLINARY P. 3.10(F). At trial, Alcala testified that her experience with Ponce had a negative impact on her impression of the legal profession. She testified that after her experience with Ponce, she felt that she could not trust any attorney anymore. This evidence reflects damage to the profession and disrespect for the legal profession. *See id.* R. 3.10(D),(I).

Having considered the factors under Rule 3.10, we cannot conclude the trial court abused its discretion in ordering Ponce disbarred, and we overrule Ponce's issue asserting the sanction of disbarment was excessive.[5]

## CONCLUSION

Based on the foregoing, the trial court's judgment is affirmed.

Rebeca C. Martinez, Chief Justice

---

Ponce from the practice of law, signed on December 2019, suspending Ponce's license for a period of 32 months until August 18, 2022.

[5] Ponce argues he was deprived of procedural due process because the Commission requested imposition of "an appropriate sanction" in its petition and did not specifically reference disbarment until trial. However, as Ponce admits in his brief, there is no authority requiring the Commission to specify disbarment in its petition.